## THOMASON *v.* THOMPSON *et al.*

1. Where an execution has been levied on land, and a claim is filed, and the papers are returned to the superior court of the county where the land lies, for trial, that court has jurisdiction of an ancillary petition in aid of the levy, instituted by the plaintiff in execution against a claimant, irrespective of the claimant's residence, as to matters germane to the issue involved in the claim case.

2. A judgment will not be set aside on the ground that the prevailing party practiced a fraud on the court and on the adverse party by concealing the evidence of his fraud, where the particular fraud, evidence to establish which is alleged to have been concealed, was the issue on trial and there adjudicated.

3. Where the proceeds of the sale of land under a mortgage fi. fa. are claimed by a common-law judgment of inferior date to the mortgage, and a rule against the sheriff is brought to distribute the money, to which rule both lien creditors are parties, and the validity of the mortgage lien is attacked by appropriate pleadings, and the jury renders a verdict sustaining the validity of the lien, upon which judgment is entered, such judgment will estop the holder of the common-law fi. fa. from attacking the deed by the sheriff to the mortgage creditor as purchaser, for the same alleged cause of invalidity adjudicated in the rule to distribute the money arising from the sale of the land.

Argued June 28,—Decided November 12, 1907.

Equitable petition. Before Judge Holden. Greene superior court. May 11, 1907.

R. U. Thomason, as transferee from the executors of P. R. Thomason, of a common-law fi. fa., issued upon a judgment in favor of these executors, against H. E. Thompson, rendered at the September term, 1886, of Greene superior court, brought his equitable petition in that court against Swann, sheriff, successor of English, former sheriff, and Noel P. Park, as administrator of H. E. Thompson, residents of Greene county, and Henry C. Thompson, and his wife, residents of Fulton county, alleging substantially as follows: On December 3, 1885, William H. and H. E. Thompson, both then of Greene county, but now deceased, executed and delivered to Henry C. Thompson, a mortgage to secure a pretended indebtedness of $5,500, covering a tract of land in Greene county. William H. Thompson died testate, bequeathing all his property to Henry E. Thompson, who was nominated as his executor. At the September term, 1886, Henry C. Thompson foreclosed this mortgage, the proceeding being against Henry E. Thompson individually and as executor of William H. Thompson. In Novem-

ber, 1886, the land was sold by English, sheriff, under the mortgage fi. fa. of Thompson and the common-law fi. fa. of Henderson and Campbell, executors of P. R. Thomason, and bid in by Henry C. Thompson, for $2,019, and a sheriff's deed was made to him in pursuance of that sale. At the March term, 1887, Campbell and Henderson, as executors, obtained a rule against the sheriff, requiring him to show cause why the proceeds of this sale should not be paid to them upon their fi. fa. English answered, setting up that the fund was claimed by Thompson upon his mortgage fi. fa. Thompson then had himself made a party and claimed the fund. Henderson and Campbell tendered an issue, on the trial of the rule, setting up that the mortgage on which Thompson's fi. fa. was based was without consideration and was executed for the purpose of defeating their common-law fi. fa., and "that the said Henry C. Thompson and Wm. H. Thompson and H. E. Thompson, in the giving of said mortgage, colluded and confederated against movants' just claim and right." The common-law fi. fa. of Henderson and Campbell, executors, was upon an indebtedness of Wm. H. and H. E. Thompson; and the former having died before the suit was brought, it proceeded against H. E. Thompson alone. On the trial of the rule it was agreed that the sole issue to be submitted to the jury was the validity or invalidity of the mortgage; and they returned a verdict in favor of its validity. It is further alleged, that this verdict was obtained by a fraud practiced upon the court, in the concealment of the material fact that this mortgage was without consideration and given purely to defeat and defraud creditors, and to defraud petitioner and prevent the collection of the common-law fi. fa., and that the foreclosure, sale, and claim of the proceeds thereof were parts of this fraudulent scheme. It is charged that when the mortgage was made and delivered to Henry C. Thompson, he executed and delivered to H. E. Thompson, one of the mortgagors, the following secret writing: "This is to certify that the mortgage made to me by W. H. Thompson and H. E. Thompson on their land and stock was given simply to keep their creditors from pressing them, and was not given for value received. December 3d, 1885. [Signed] H. C. Thompson." This paper, at the time of the trial of the rule, was in the hands of H. E. Thompson, and its existence was concealed from plaintiffs in the common-law fi. fa. and could not have

been discovered by them by the exercise of any kind of diligence. H. E. Thompson continued in possession of the land without paying rent, till his death in 1905, receiving all the rents, issues, and profits therefrom. The secret writing was in the hands of Henry Thompson, a reputed illegitimate son of H. E. Thompson, at the time of the latter's death, having been turned over to him with the injunction to keep it concealed. Knowledge of this writing was obtained from Henry Thompson soon after the death of H. E. Thompson, in 1905, by a promise on the part of petitioner that he would not disturb the possession of Henry Thompson of a part of this land, which he claimed his father had given him. Certain letters are set out, which it is claimed show admissions on the part of Henry C. Thompson of the fraudulent scheme alleged. Henry C. Thompson secured a loan on the property, which it is stated was only made after he had obtained H. E. Thompson's consent. It is further alleged that Henry C. Thompson, in furtherance of the fraudulent scheme, "has colluded, combined, and confederated with his wife," who is setting up some pretended claim to the land, but that her pretended title, if any she has, was executed to her for the purpose of hindering, delaying, and defrauding petitioner, with knowledge on her part of this purpose. The prayers of the petition are, that the judgment in the rule case be set aside; that a decree be rendered fixing a special lien on the land in favor of petitioner, to pay his debt; that Thompson and his wife be enjoined from incumbering or selling the land; that a receiver be appointed to take charge of the land; and for process.

Henry C. Thompson and his wife demurred on numerous grounds,—among others, that the court is without jurisdiction, because none of the parties against whom substantial relief is prayed reside in Greene county; that there is a nonjoinder of parties plaintiff and defendant, and a misjoinder of parties defendant; that the petition is without equity, and sets forth no cause of action upon which to predicate the relief prayed; that the matter is res judicata; that the judgment sought to be set aside has been rendered for more than three years, and this action is barred by the statute of limitations; and that the petition does not sufficiently show that the judgment sought to be enforced is in life. H. C. Thompson and his wife filed separate answers, denying all allegations of fraud, and H. C. Thompson specially denied that he

OCTOBER TERM, 1907, Wait

signed the paper relied on by the plaintiffs as ground for the relief prayed against him.

At the hearing the plaintiff offered an amendment setting up that .H. C. Thompson was insolvent, and had taken charge of and appropriated certain crops of H. E. Thompson, raised on other lands, since the death of H. E. Thompson, and refused on demand to deliver them to H. E. Thompson's administrator; that the plaintiff's fi. fa. had been levied on the land in dispute, and a claim had been interposed by Mrs. Thompson, which claim is pending in Greene superior court; that Park, administrator of H. E. Thompson, intends to file a suit to recover this land from H. C. Thompson and his wife; that while H. C. Thompson was the apparent owner of the land, he borrowed certain money from one Northrup, and that James B. Park, as attorney for Northrup, is about to file an ejectment suit for the land. It is prayed that these suits be enjoined, and that the mortgage and the sheriff's deed be canceled. Another amendment seeks to add a prayer that the mortgage-foreclosure judgment be set aside as fraudulent and void. A third amendment alleges that Thompson and his wife are colluding and confederating to prevent the plaintiff from collecting his debt, and that Mrs. Thompson paid out no money for the land, is not an innocent purchaser, and has never been in possession thereof. The mortgage and the note are fully set out. After hearing evidence in support of the various contentions of the parties, the court reserved its decision. On May 10 (one day before the court rendered its judgment) a fourth amendment was offered, setting up the revival of the judgment in 1898, and the transfer of the fi. fa. at that time to the plaintiff. It further alleged the filing of a petition, to the February term, 1907, to revive the judgment a second time; and "that in order to avoid a multiplicity of suits, your petitioner hereby, in this proceeding, brings suit on said dormant judgment, as provided by law, against Noel P. Park, administrator of the estate of Henry E. Thompson, for the amount due on the same." The prayer is for a judgment against this administrator, binding the property described in the petition. The bill of exceptions assigns error upon the court's refusal to allow any of these amendments, and upon the refusal to appoint a receiver and enjoin the several defendants as prayed.

*Foster & Foster* and *Park & Park*, for plaintiff.

*John C. Reed* and *Samuel H. Sibley*, for defendants.

EVANS, P. J. 1. The first ground of the demurrer disputes the jurisdiction of the court, and in discussing its merits we will consider the petition as if all the amendments had been allowed. Many allegations of the proffered amendments referred to subject-matters which bear no relation to the main relief prayed by the plaintiff. The ultimate purpose of the plaintiff is to subject the land in controversy to the lien of his judgment against H. E. Thompson. The first step to enforce the lien of this judgment was to cause the execution issued thereon to be levied on the land, to which levy Mrs. H. C. Thompson interposed her statutory claim. The apparent legal title is in her, and is based on the sheriff's sale, which divested the lien of the plaintiff's judgment, and is fortified by the judgment distributing the proceeds arising from the sale of the land by the sheriff. It is clear that unless the plaintiff is entitled to set aside the sheriff's deed and the judgment in the money-rule case, the title of the claimant must prevail. The filing by the plaintiff of an equitable petition in aid of his levy is a recognition of this fact. It requires but a glance at the allegations and prayers of the petition and amendments to see that the Fulton county defendants, H. C. Thompson and wife, are the only defendants against whom substantial relief is prayed. These defendants demurred to the jurisdiction of the superior court of Greene county, because of their residence in Fulton county. The constitution of this State requires that equity cases shall be tried in the county where a defendant resides against whom substantial relief is prayed. Civil Code, §5871. Even before this provision was incorporated in the fundamental law, it was held, that, in analogy to the rule at law, equity causes must be brought in the county where a defendant resides against whom substantial relief is prayed, but that the rule does not apply to bills ancillary to suits at law; that in so far as such a bill seeks no relief outside of the suit pending, the county where the suit is pending has jurisdiction, and the constitutional mandate in this respect is to be interpreted in the light of the history of the law on that subject in this State prior to its first appearance in the constitutions of this State. *Carswell* v. *Macon Mfg. Co.*, 38 *Ga.* 403. The constitutional guaranty that a person may not be sued outside

of the county of his residence is a personal privilege, which may be waived by him. A defendant may waive the jurisdiction of the court as to his person by appearance and pleading. So, a litigant, by instituting a suit in another county, impliedly and necessarily consents that the forum to which he applies for relief may adjudicate all matters between him and his adversary which are germane to the litigation. This principle rests on the idea that the plaintiff, by voluntarily instituting his suit, gives the court of the county where it is so instituted jurisdiction of his person sufficient to answer all the ends of justice respecting the suit originally instituted. . *Caswell* v. *Bunch,* 77 *Ga.* 504. The interposition of a claim is permissive and not compulsory. *Walden* v. *Walden,* 128 *Ga.* 131. It would be immaterial, so far as venue is concerned, whether the relief of the adversary party be administered through pleadings in the original case, or by ancillary suit. *Moore* v. *Medlock,* 101 *Ga.* 94. The waiver of jurisdiction as to the non-resident's person, however, is limited to relief germane to and involved in the action which he starts. In the case of *Merchants Bank* v. *Davis,* 3 *Ga.* 112, an execution owned by persons residing in one county was levied on land in another, and a claim was interposed. It was there held that the superior court of the county where the land lies has jurisdiction over plaintiffs residing out of that county, in equity, in consequence of the pendency of the claim, in a proper case made. So, also, when a claim is filed to the levy of a fi. fa., the same right exists in the plaintiff in fi. fa. to file equitable proceedings in support of his levy, and enforce all equities pertaining to his rights as such judgment creditor, in the county where the claim is pending. *Dawson* v. *Equitable Mortgage Co.,* 109 *Ga.* 389. Therefore, if the matters alleged against H. C. Thompson and wife, and the relief prayed against them, be germane to the issue involved in the claim case, the superior court of Greene county has jurisdiction of the present case. The paramount issue in a claim case is whether or not the property levied on is subject to the fi. fa. *Shumate* v. *McLendon,* 128 *Ga.* 526. The claimant's title is derived from H. C. Thompson, who gets his title from the judgment debtor of the plaintiff. The plaintiff wishes to set aside this title as fraudulent. He could do this by appropriate pleadings in the claim case. If in the claim case, why not by ancillary suit? In either

proceeding it would be necessary to make H. C. Thompson a party. But he can not object to the jurisdiction of the court, if he is a necessary party to obtaining the relief against his wife and the court has jurisdiction as to her so far as the issues in the claim case are involved. We therefore hold that the filing of the claim was such a pending proceeding as conferred jurisdiction on the superior court of Greene county to entertain the petition in aid of the levy of the plaintiff's fi. fa.

2. The ground upon which the plaintiff relies to set aside the sheriff's deed to H. C. Thompson is the invalidity of the process under which the land was sold. There is no pretense that any irregularity entered into the various stages of the proceedings which eventuated in the sale. The sale is said to be void solely because the mortgage on which the judgment of foreclosure is founded is without consideration and fraudulent. The plaintiff is held off from an immediate attack on the sheriff's deed, by a judgment upon the very issue which plaintiffs in fi. fa. caused to have made in the rule case to distribute the money arising from the sale of the land by the sheriff. When the land was sold by the sheriff, the executors of Thompson demanded that the proceeds be applied to their fi. fa. Upon the sheriff's refusal to pay over the money to them, they brought a rule against him. The sheriff answered, and H. C. Thompson intervened and claimed the money on his mortgage fi. fa. The pleadings distinctly and sharply made the issue that the apparent superiority of the mortgage lien must yield to the junior common-law judgment, because the mortgage was without consideration; the parties thereto were uncle and nephew; it was fraudulent, and made for the sole purpose of defeating the lien of plaintiff's judgment. This was the only issue submitted to the jury, and they found in favor of the validity of the mortgage, and judgment was accordingly entered up. This judgment estops the plaintiff from raising for the second time the identical matter therein decided. To avoid any estoppel, the plaintiff seeks to set aside this judgment as one procured by perjury and fraud practiced on the court, the fraud alleged being that the mortgagor falsely and fraudulently represented to the court the bona fides of his mortgage, and with the aid of perjured testimony procured an unconscionable advantage.

Fraud is the arch enemy of equity, and a court of equity will

relieve against a judgment obtained by imposition. Civil Code, §§4032, 5370. Thus, when a litigant keeps the opposite party from court, equity will relieve against the judgment obtained in his absence (*Dodge* v. *Williams*, 107 *Ga.* 410; *Bigham* v. *Kistler*, 114 *Ga.* 457); or, where one party fraudulently induces his adversary to withdraw his defense, the judgment will be set aside. *Markham* v. *Angier*, 57 *Ga.* 43. The fraud in cases of this kind is collateral and extrinsic of the judgment. The great current of authority limits the frauds for which a bill to set aside a judgment between the same parties, rendered by a court of competent jurisdiction, will be sustained, to those matters which are extrinsic and collateral to the matter tried. U. S. *v.* Throckmorton, 98 U. S. 61; Pico *v.* Cohn, 91 Cal. 129; Camp *v.* Ward, 69 Vt. 286; Friese *v.* Hummel, 26 Ore. 145; 23 Cyc. 1026, and citations. In the Throckmorton case it was said that the mischief of retrying every case in which the judgment or decree was rendered on false testimony, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.

The argument of the plaintiff in error would seem to deny that the principle obtains in Georgia, which is so generally recognized by courts elsewhere, that equity will not set aside a judgment because it was founded on a fraudulent instrument or perjured testimony, or for any matter which was actually presented and considered in the judgment assailed. The argument is rested solely on one case—*Griffin* v. *Sketoe*, 30 *Ga.* 300. It appears in that case that one Williams brought complaint for land against Sketoe, which resulted in a verdict for the defendant. Williams renewed his ejectment suit, and, while it was pending, died. Griffin was appointed his administrator, and, to avoid the estoppel of the former judgment, brought an equitable petition to set it aside on the ground of fraud and perjury. The fraud consisted in predicating his defense of seven years possession upon a deed which had been fraudulently antedated, and offering the subscribing witness thereto, who falsely testified that the deed was executed on the date stated in the instrument. The court held that a judgment obtained under these circumstances was fraudulent,

and would be annulled. In the course of the discussion, Lyon, J., said, in substance, that the issue in the trial was title to the whole lot; the defendant was in actual possession of a small part of the lot, and relied upon the falsely-dated deed, to extend that possession to the whole lot; a verdict for the defendant could not have been rendered without the deed, and was therefore dependent on it. As we understand it, this decision, at furthest, decides only that a judgment will be set aside when the prevailing party practices a fraud on the court in proving his case by means of a forged or fraudulent document. The principle enunciated may not be in exact accord with the rule on the subject which prevails in other jurisdictions. But there is a wide distinction between the case at bar and that of *Griffin* v. *Sketoe*. In the trial which resulted in the judgment under discussion in the present case, the fraud was distinctly in issue; in fact was the only issue,—squarely made in the pleadings, expressly included in the verdict, and solemnly adjudicated in the judgment. In *Griffin* v. *Sketoe* no issue was made as to the antedating of the deed; the fraud of the prevailing party was not an issue; his fraud consisted in the use of a paper, the crookedness of which he successfully concealed from the court and his adversary. The reason for setting aside the verdict must have been that a new trial should be had so that the integrity of the defendant's deed could be made an issue. We dare say that if the true date of the deed had been in issue in the former trial, the judgment would not have been set aside and another trial ordered because of the discovery of new evidence. Even in case of timely and prompt motion for new trial our adjudications are numerous, and the statute is plain, that a new trial will not be granted because of newly-discovered evidence cumulative and impeaching in its nature. To set aside a verdict and judgment for fraud, where the particular fraud was in issue, because of the discovery of additional evidence to prove it, would deprive a judicial finality—a judgment—of its inherent and distinguishing characteristic. The same reason for annulling a judgment because of the discovery of new evidence to establish the fraud would apply to the unfortunate litigant who had been unjustly charged with fraud, so as to give him another opportunity to raise anew the issue of fraud, on newly discovered evidence of

his innocence.   Of course such could not be done.   Interest rei-
publicæ ut sit finis litium.

But it is said that the newly-discovered evidence of the fraud
of H. C. Thompson is his written admission, and that on demurrer
the genuineness of the paper is confessed.   For the purpose of the
demurrer, the authenticity of what is called in the brief "the
certificate of rascality" is admitted.   Wherein does this circum-
stance affect the rule?   The rationale of the rule against reopen-
ing an issue rests upon the maxim just quoted and upon the other
maxim that one should not be twice vexed with the same suit.
There may be a complete reply to the writing relied on to estab-
lish the fraud; it may be entirely explained away; its genuineness
may be denied.   It is but an admission, and, so far as its legal
effect goes, it stands in no more favored position than if it were
verbal.   Suppose the allegation had been that H. C. Thompson
had admitted what is contained in the writing, in the presence
of four or five reputable witnesses, would the rule be different?
We therefore will not extend the case of *Griffin* v. *Sketoe* to a case
where the newly-discovered evidence of the fraud relied on to annul
a judgment was the same fraud which was made an issue in the
trial which eventuated in the judgment assailed.

We have not adverted to the alleged perjury, because the statute
provides that a judgment obtained by perjury shall not be set
aside on that account, unless the person charged with the perjury
has been duly convicted.   Civil Code, § 5366.

We have thus reached the conclusion that the plaintiff is estopped
by the judgment in the money-rule case from attacking the validity
of the mortgage.   His case was dependent upon evading the es-
toppel of this judgment.   It is therefore unnecessary to discuss
the other features of the case raised by the demurrer or the an-
swers.

*Judgment affirmed.   All the Justices concur, except Holden, J.,
who did not preside.*