## HOWELL et al. v. THE STATE.

1. Without a request duly presented it was not error for the trial judge to fail to give in charge the principles contained in the Penal Code, § 1009, to wit: "Direct evidence is that which immediately points to the question at issue. Indirect or circumstantial evidence is that which only tends to establish the issue by proof of various facts, sustaining, by their consistency, the hypothesis claimed."

2. The verdict in the case not being wholly dependent on circumstantial evidence, it was not error for the judge to fail to charge as follows: "To warrant a conviction on circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." *Nobles* v. *State*, 127 *Ga.* 212 (5) (56 S. E. 125); *Jones* v. *State*, 147 *Ga.* 356 (3) (94 S. E. 248); *Bass* v. *State*, 152 *Ga.* 416 (10) (110 S. E. 237).

3. Without a request duly presented it was not error for the court to fail to charge the jury "that a conspiracy can be proved by circumstantial evidence as well as by direct evidence." Moreover, failure to so charge was not injurious to the defendants, but rather beneficial.

4. It was not error for the judge to fail to charge Penal Code § 1013 in its entirety, as follows: "Whether dependent upon positive or circumstantial evidence, the true question in criminal cases is, not whether it be possible that the conclusion at which the testimony points may be false, but whether there is sufficient testimony to satisfy the mind and conscience beyond a reasonable doubt," and in charging instead thereof the following: "In criminal cases the true question is, not whether it be possible that the conclusion at which the testimony points may be false, but whether there is sufficient testimony to satisfy your minds and consciences that the defendants are guilty of the crime charged, and that beyond a reasonable doubt." The excerpt last quoted is a substantial compliance with the Penal Code section above quoted.

5. The court did not err in charging the provisions of the Penal Code, § 1012, as follows: "Moral and reasonable certainly is all that can be expected in a legal investigation. In civil cases a preponderance of the evidence is deemed sufficient, but in criminal cases the law goes one step further and requires a greater strength of mental conviction to authorize a verdict of guilty."

(a) It is the better practice in a criminal case not to charge the law of preponderance of evidence, but to do so does not require a reversal of the judgment of the trial court. *Williams* v. *State*, 125 *Ga.* 302 (3), (54 S. E. 108); *Holmes* v. *State*, 131 *Ga.* 806 (63 S. E. 347), *Bradford* v. *State*, 151 *Ga.* 334 (106 S. E. 718).

(b) It was not error, in instructing the jury as to the amount of mental conviction necessary in criminal cases, to charge that in such cases "the law goes one step further and requires" a greater strength of mental conviction, to authorize a verdict of guilty. The use of the words last quoted was beneficial to the accused, rather than detrimental.

6. The court did not err, in the absence of a written request duly presented, in failing to charge that if Clarence Howell carried the female alleged to have been raped, away from the automobile where he left Leo Hill and the other female, and carried the female away "for the purpose of having sexual intercourse with her by and with her consent, with no intention to rape her, and after she refused to consent to the sexual act, if then, for the first time the intention to rape her was formed in his mind, and that if Leo Hill did not share this intention to rape then and there for the first time formed in the mind of Clarence Howell, and the said Leo Hill did not know of this suddenly formed intent to rape, then the said Leo Hill could not be guilty as principal in the second degree, and it would be the duty of the jury to acquit him." The charge of the court, instructing the jury that they could find one defendant guilty and the other not, fairly and sufficiently instructed the jury on the issues; and if the defendants had desired more elaborate instructions, they should have so requested.

7. It was not error for the court to fail to charge the jury "that mere presence and participation in the act of committing offense of rape, if this offense was committed by Clarence Howell on the person of [the female alleged to have been assaulted], is not conclusive evidence of consent and concurrence in the perpetration of the act of rape by a defendant, or Leo Hill, who is sought to be held responsible for the offense of rape by Clarence Howell, if such offense was committed by him, as aiding and abetting the actual perpetrator, unless Leo Hill, the alleged principal in the second degree, participated in the felonious design of the person who committed the actual crime of rape, if such was committed."

8. The court did not err in charging the jury as follows: "I charge you, gentlemen of the jury, that before you would be authorized to convict the defendant, Leo Hill, you must believe from the evidence in this case that he is principal in the second degree, and that he was a member of a conspiracy between himself and the other defendant, Clarence Howell, and by his furtherance of the conspiracy the offense charged was committed, and that he, Leo Hill, aided and abetted the act to be done. The criticism of this charge is that the court failed to define and explain the term "aided and abetted the act to be done," and that the court should have charged in that connection that if one was constructively present at the commission of a crime, keeping watch or guard, and mentally approved or consented to the commission of the crime, yet if that consent was unknown to the person committing the crime, the one so mentally approving could not be held guilty as principal; and also that the court failed to charge in the same connection touching mere presence and participation, as insisted in the assignment of error dealt with in the seventh headnote.

9. The court charged the jury as follows: "However, I charge you further, gentlemen of the jury, that you could not convict the principal in the second degree without convicting the principal in the first degree." Error is assigned on this charge on the ground that while the charge may be abstractly correct, it was the duty of the court in immediate

connection therewith to charge the jury that they could convict the principal in the first degree and acquit the principal in the second degree, and that without this explanation the effect of the charge was to express to the jury the belief that if they found the principal in the first degree guilty they were compelled to find the principal in the second degree guilty. *Held*, that the charge is not subject to the criticism made. Moreover, in the general charge the court fully and fairly instructed the jury that they might find a person charged as principal in the first degree guilty, and the person charged as principal in the second degree not guilty.

10. The alleged newly discovered evidence did not require the grant of a new trial. It was at most impeaching and contradictory to evidence introduced by the State, and was met by counter-affidavits. A part of the alleged newly discovered evidence is entirely without probative value, and is not of such character as would probably produce a different effect if there should be a new trial. Moreover, two of the alleged newly discovered witnesses were persons who were in the automobile with the defendants and the females claimed to have been assaulted, the same afternoon the crime is alleged to have been committed. The other alleged newly discovered evidence related to a conversation which took place in the presence of the father of Leo Hill. Reasonable diligence would have discovered what the alleged new witnesses could testify on the trial. The other newly discovered evidence is admitted by movants to be impeaching.

11. Movants complain that the court erred in not instructing the jury in this case "that they could not convict the defendants upon the testimony of the female alleged to have been raped; however positive it may be, unless her evidence is corroborated; that, before they would be authorized to convict the defendants, there must be other evidence, independent of the victim or person alleged to have been raped, sufficient to connect the accused with the offense charged and sufficient to raise an inference of guilt; that if the evidence of the female alleged to have been raped was not corroborated by some evidence or circumstance independent of her testimony, by some fact or circumstance going to connect the defendants with the offense of rape, then it would be the duty of the jury to acquit; that it was for the jury to determine from all the proved facts and circumstances whether the female alleged to have been raped had been corroborated or not." It is insisted that "the law requires that the evidence of the female alleged to be raped must be corroborated by some independent fact, or circumstance independent of her evidence, connecting the defendant with offense of rape, sufficient to raise an inference of guilt." *Held*, that the verdict of guilty was amply corroborated by other evidence; therefore this ground of the motion for new trial is without merit.

12. Movants complain that the court erred in failing to charge, in principle or in substance, the provision of Penal Code section 1052, to wit: "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case." In the absence of a written request duly presented, it was not error for the

court to fail to charge the jury on the subject of impeachment of witnesses. *Downing* v. *State*, 114 *Ga.* 30 (3) (39 S. E. 927); *Brown* v. *State*, 148 *Ga.* 509 (97 S. E. 69); *Thomas* v. *State*, 150 *Ga.* 269 (4-5) (103 S. E. 244).

13. Movants complain that the court, in its charge, failed to make any reference to their defense in this case, which was that the defendants met the two females at the bridge by previous engagement made with one of them, and that it was mutually understood and agreed that said meeting should be had, and that the object of the meeting was to engage in sexual intercourse with the girls with their free consent, and that by reason of said previous arrangement with the said girls the defendants did meet them, and that Clarence Howell did have sexual intercourse with one of them, with her free consent, and not forcibly and against her will. · *Held:* The court having stated that the defendants filed a plea of not guilty, if any further instructions as to the contentions of the defendants were desired, there should have been proper written request for such instructions. The court did charge: "If you find that the sexual act was accomplished with the mental consent and acquiescence of the female, and not in opposition to her will, the offense of rape was not committed."

14. The evidence supports the verdict.

No. 4863. SEPTEMBER 15, 1925.

Rape. Before Judge Camp. Laurens superior court. March 28, 1925.

*J. L. Kent, E. H. Williams, E. L. Stephens,* and *T. P. Stephens,* for plaintiff in error.

*George M. Napier, attorney-general, Fred Kea, solicitor-general, T. R. Gress, assistant attorney-general,* and *Hightower & New,* contra.

GILBERT, J. Clarence Howell and Leo Hill were indicted for the offense of rape. The jury returned a verdict of guilty, with recommendation, fixing the maximum and minimum punishment at twenty years, and they were sentenced accordingly. They filed a motion for a new trial, which was overruled, and they excepted. The evidence introduced by the State tended to show, and authorized the jury to find, that on Sunday, January 4, 1925, three schoolgirls who were near neighbors residing in the country, and who had been visiting the homes of two of the number, were walking along the highway, when the defendants appeared in an automobile. The defendants insisted upon taking the young women into the car, offering to take them home. At first the women declined, saying they preferred to walk. After insistence upon the part of the defendants they entered the automobile, and

one of the young women, after being carried beyond her home, was returned and permitted to leave the car, which was not stopped but merely slowed down. The defendants assured the other two young women that they would take them home, but did not at once do so. After running in a different direction they picked up two other young girls residing in the neighborhood, but soon thereafter these two girls were left at the home of one of them. Thereafter the two defendants traveled around in different directions until about 8:30 p. m., giving various excuses and explanations for their failure to carry the girls home. They were drinking and had a pistol or pistols on their persons, with which they at times threatened the girls, refusing to permit them to leave the automobile. On the pretext of seeking water at a spring near the roadside they first took one of the girls and then the other out of the car. The two girls, who attended the same school, were each sixteen years of age. One of them is a first cousin of Leo Hill and a second cousin of Clarence Howell. Howell is a married man. Howell forced one of the girls a short distance from the road, and by force and threats of violence had criminal intercourse with her. While this was going on, Leo Hill, by force and intimidation, had criminal intercourse with the other girl. The girls were then taken home, arriving shortly after nine o'clock at night, finding their respective families considerably excited, due to the lateness of the hour of their return. The defendants had instructed the girls to say that they had been taken into the car by the defendants for the purpose of bringing them home but that they had had car trouble and that one of the defendants had to be taken to his home on account of drunkenness; and they were threatened with violence if they did not so report.

Due to the peculiar actions of the girls, their excited manner and their peculiar conduct, a physician was called for the purpose of ascertaining if they had been "doped." On hearing the explanation of the girls, which was in accordance with instructions from the defendants, the physician did not then make any examination to see if they had been outraged. Nothing further was learned that night. Each of the girls slept at her respective residence, one of them temporarily residing, for the purpose of attending school, with her sister and brother-in-law. The next morning the latter girl was taken to her home, some ten miles

distant, by her sister and brother-in-law. On the way to the
home of her parents the latter girl divulged the facts above de-
tailed, to the effect that she had been criminally assaulted by
Clarence Howell, under the circumstances above stated. At about
the same hour the other girl, retracting the statement of the night
before, divulged to her mother the facts and circumstances detail-
ed above, and to the effect that she had been outraged by Leo Hill.
Their clothing was examined and bore some evidences corroborating
the statements of the females. The doctor was again called in '
on Thursday, and on the trial testified that both of the females in
their private parts showed evidences of having had sexual inter-
course, that the parts were swollen, and that the examination was
painful. The spot on the roadside where the crime was alleged
to have been committed was examined by witnesses who on the
trial testified as to imprints upon the ground, corroborative of the
testimony of one of the girls to the extent that knee and toe prints
and impressions of the body were found. The fact that the accused
were drinking and had a pistol or pistols in the car was shown
by witnesses other than the girls who were alleged to have been
raped. The defendants made statements on the trial corroborating
in detail substantially all of the facts above stated, with the mate-
rial difference that Howell had intercourse with one of the girls
by her free consent and permission, and that Hill did not have in-
tercourse as claimed. The defendants, moreover, insisted that the
meeting with the girls was by previous arrangement made on
Saturday, the day before, between Hill and the young lady who
is his first cousin, and that the girls entered the car of their own
motion, and not by the invitation of the defendants.

One witness, Miller Sears, testified on the trial that the two
defendants came to his house about nine o'clock on Sunday night,
January 4; that he had gone to bed; that Howell was his brother-
in-law and Hill was his third cousin; that they drove to his gate
and blew the car-horn; that witness got up, went out, and en-
gaged in conversation with the two defendants; that defendants
told him "they had been carousing around; . . they said they
had been off with some women, that they had carried some women
to no man's land. Clarence Howell had some whisky there; he
drank some of it in my presence. I asked them what kind of
women it was, and Leo Hill said they were up at the top of the

pot and peeping over. I said, 'Well, boys, you didn't have any trouble, did you?' And Leo Hill said, 'No, I didn't have such bad time getting mine;' and Clarence Howell said, 'Believe me, I had a hell of a time, but I got it.' Leo Hill took his pistol out on that occasion and handed it over to me, but I would not take it." One ground of the motion for a new trial is based upon affidavits offered as newly discovered evidence attacking this testimony on the ground of contradictory statements. Another ground of the motion is based upon alleged newly discovered evidence contradicting some of the evidence of the two girls who testified that they had been assaulted, and imputing the use of profane language and improper conduct to one of them.

From the above statement it will appear that the verdict is duly supported by evidence. The headnotes, except the fourteenth, do not require elaboration.

*Judgment affirmed. All the Justices concur.*