HATCHER *v.* THE STATE.

No. 8864.   FEBRUARY 20, 1933.   REHEARING DENIED MARCH 2, 1933.

*Orville A. Park* and *Oliver C. Custer,* for plaintiff in error.

*George M. Napier, attorney-general, Charles H. Garrett, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

HILL, J.   Ross Hatcher Jr. was indicted, tried, and convicted of the offense of rape, and was sentenced to death by electrocution. He made a motion for new trial, which was overruled, and he excepted.

The questions raised in the bill of exceptions and in the motion for new trial, on the plea in abatement, the demurrer to the indictment, and the challenge to the array of jurors, are controlled by the principles ruled in *Haden* v. *State,* 176 *Ga.* 304 (168 S. E. 272).

The defendant filed a motion to arrest, vacate, and set aside

the verdict and sentence of the court. The motion appears in the record as follows:

"Comes now the defendant, Ross Hatcher Jr., and files this his motion to arrest and set aside the judgment and sentence of the court entered on the second day of November, 1931, upon the following grounds, to wit: (1) Because the verdict finding this defendant guilty and the judgment and sentence entered thereon are null and void, for the following reasons: This defendant was formally arraigned and pleaded not guilty to the indictment, and his trial was entered upon at the September special term, 1931, of Bibb superior court, and on the 29th day of October thereof. The trial continued from day to day until the 31st day of October, 1931, when the cause was submitted to the jury, and the jury retired and entered upon their deliberations on the evening of the 31st day of October, 1931; and thereafter and while the said jury were deliberating, and before they returned their verdict, the said special term was finally adjourned, as appears by the minutes of the court, said minutes containing the following entries on the 31st day of October, 1931, to wit: 'The special September term adjourned this 31st day of October, 1931.' 'The September term this day adjourned.' 'The court this day adjourned until court in course.' The court having finally adjourned for the term, the further deliberation of the jury and the verdict returned by them were illegal and null and void, and the judgment and sentence based on said verdict is likewise null and void, and should be arrested and set aside. While the Honorable Malcolm D. Jones, the judge of the Macon Circuit, who presided at said special term, has not signed the minutes, this is in keeping with the practice of the said judge, who appears not to have signed any minutes not only of the said special term but at any of the preceding regular terms over which he presided." (2) "Because the verdict finding this defendant guilty and the judgment and sentence entered thereon are null and void, for the following reasons: This defendant was formally arraigned and pleaded not guilty to the indictment, and this trial was entered upon at the September special term, 1931, of Bibb superior court, and on the 29th day of October thereof. The trial continued from day to day until the 31st day of October, 1931, when the cause was submitted to the jury, and the jury retired and entered upon their deliberations on the evening of the 31st day of October, 1931. The

regular November term of said court is fixed by law to convene on the first Monday in November, and on the said first Monday in November, 1931, being the 2nd day of November, the Honorable Malcolm D. Jones, judge of the Macon Circuit, who had presided at the said September special term, convened the November term at ten o'clock a. m. The said court was regularly organized, the grand jury empaneled and sworn, and the said judge delivered his charge to the grand jury; the traverse jurors were empaneled and sworn; and the organization of the court was completed in every particular. After the convening of the court and its organization, and while the said November term was in regular session, the jury to whom had been submitted the case of The State v. this defendant and which had retired to consider their verdict on Saturday, October 31, 1931, during the September special term of said court, came into court and rendered their verdict, finding this defendant guilty. When it was announced that the jury had made a verdict, counsel for the defendant called the court's attention to the fact that the November term had already convened, and that therefore the verdict could not properly be received. The court replied that the verdict could be received at the November term, and directed the sheriff to bring in the jury. The jury were then polled and were discharged for the term, the minutes of the court showing the following entries: 'November term, 1931. Monday morning, November 2, 1931. The court met. Present the Hon. Malcolm D. Jones, judge, J. R. Hicks, sheriff, V. H. Roberts, clerk. The sheriff having returned the venire into court, the following named persons were this day empaneled and sworn to serve as grand jurors. This 2nd day of November, 1931.' Then follows the names of twenty-two grand jurors. Immediately following on the said minutes of November 2, 1931, is the following entry, to wit, 'The State v. Ross Hatcher Jr., No. 1469, Sept. term, 1931, Bibb superior court. Plea, verdict, and sentence. Jury sworn.' (Entry of names of twelve jurors.) This defendant, Ross Hatcher Jr., has been formally arraigned and pleads not guilty. This Oct. 29, 1931. Chas. H. Garrett, Solicitor-general. We, the jury, find the defendant guilty. Nov. 2, 1931. Burt A. Schmidt, Foreman.' Then immediately follows the judgment and sentence of the court: 'The defendant Ross Hatcher Jr., on the trial of the above-stated case at the present term of this court,' etc. The November term of the

court having convened and been regularly organized, the September special term had expired as a matter of law, and the jury who were then considering the case against this defendant should have been discharged, and any further deliberations on the part of the said jury after the convening of the said November term and any verdict rendered by them after the convening of the said November term was and is void and of no effect. The attempt to continue the special term after the regular term had convened in effect was an effort to have two terms of the same court running at the same time and presided over by the same judge, and any action taken at the said special term, which had expired by its limitation and because the regular term had actually convened, was coram non judice, and the verdict and judgment and sentence entered against this defendant at the said special term was null and void. No verdict and judgment could be rendered by the jury empaneled at the September special term at the regular November term, and any attempt to receive a verdict and enter a judgment thereon and base a sentence thereon at the November term was null and void. Wherefore defendant prays that the judgment and sentence entered against him may be arrested and set aside."

An amendment to the motion in arrest and to set aside the verdict and judgment was filed by the defendant, as follows:

"1. Because the verdict finding this defendant guilty and the judgment of the court entered thereon and the sentence of this defendant to death by electrocution are illegal, null and void, for the following reasons: Defendant was formally arraigned and pleaded not guilty to the indictment, and his trial was entered upon at the September special term, 1931, of Bibb superior court, and on the 29th day of October thereof. The said September special term terminated by operation of law five days before the first Monday in November, 1931, which was the second day of November, upon which said day the regular November term of Bibb superior court was fixed by law to be held, and did actually convene. The 29th day of October, upon which day the case against this defendant was called for trial and upon which day he was arraigned and entered his plea of not guilty, being within five days before the November term was fixed by law to convene, the special term had terminated, and could not be continued legally for the trial of the case against this defendant; and therefore the trial and verdict against defend-

ant were illegal, null and void, and the judgment and sentence based on said verdict are likewise illegal, null and void."

To this motion the judge appended the following note:

"The recitals of fact in the original and amended motion to vacate and set aside the verdict and the judgment and sentence based thereon are true and correct. The entries on the minutes of the court are as stated in said motion. In connection with the minutes the following may be considered: The case of the State v. Ross Hatcher Jr., charged with rape, was on the calendar of the court for Monday, October 26, 1931; and the companion case of the State v. Charles Haden was also on the calendar for that day. The Haden case was called first, and the trial entered upon. Immediately upon the conclusion of this case the Hatcher case was called. This was on Thursday, October 29. The court was in continuous session with the usual recesses at meal time and at night. When the Hatcher case was called, no motion was made and nothing was said to the court. The case continued through Friday and Saturday; and in order to complete it if possible, an evening session was held on Saturday, October 31, 1931. At the conclusion of the charge, and after the jury had retired, the court directed the sheriff to call him if the jury reached a verdict before twelve o'clock midnight; stating that he would immediately come to the court-house and receive the verdict. There was no other announcement and no direction to the clerk or any one else to adjourn the September special term. The court gave no direction with reference to the minutes. The jury in the case had not reached a verdict when the time for convening the regular November term of the court arrived on Monday morning November 2, 1931. Just before 10 o'clock, the hour fixed for convening the November term, Mr. Park, one of the counsel for defendant Hatcher, came to the judge's chambers and said that the jury was still out in the Hatcher case and that it was time for the November term of the court to convene, and that he did not think the verdict could be received after the convening of the November term. The judge replied that the verdict could be received at the November term. Mr. Park then called attention to the necessity of filing a motion for new trial at the time [term?] at which the case was tried, and said he did not see how he could file it at the September special term, which had adjourned. The court said, in reply, that the motion could be made at the November

term. Mr. Park was not satisfied with this, and handed the judge a motion for new trial, which he had already prepared, saying that he did not want any question made on the fact that it had not been filed in time or at the proper term. The judge took the motion, and said that he would consider it filed whenever Mr. Park thought was the proper time for filing it. The judge then repaired to the court-room at the regular time for convening court, 10 o'clock a. m., eastern standard time, and the court was regularly organized as stated in the motion. At the completion of the organization of the court the judge was advised that the jury in the Hatcher case had reached a verdict. He directed that the defendant be brought into the court-room. When this was done, the jury was also brought into the court-room and the verdict was received in the presence of Hatcher and his counsel. No motion, or objection of any kind to the receiving of the verdict, was made. On the contrary, Mr. Park joined in the proceedings by asking for and obtaining a poll of the jury. Mr. Park immediately asked that the rule nisi on the motion for new trial, which had already been lodged with the court, be signed; and this was done. The court then sentenced the prisoner, there being no objection or motion made. After this, the calendar for the day was taken up and proceeded with."

It appears from the record that no action by counsel for the defendant was taken, except that counsel for plaintiff in error privately stated to the judge that counsel did not think that a legal verdict could be returned by the jury after the convening of the November term of the court, and counsel merely handed to the judge, privately in the latter's office, a motion for new trial and asked the judge to give him an opportunity to press his motion if need be, which the trial judge agreed to do, and did. No motion was made for a mistrial, or other step taken, before the verdict was rendered. They took the chances of an acquittal by the jury after having full knowledge of all the foregoing facts. They were present and participated in receiving the verdict and demanded a poll of the jury. They made no motion to the court, either when the trial was begun within five days of the commencement of the next term of court under the law, or when the court actually convened another term of court; and in such circumstances they will be held to have waived whatever right they had, if any, to move for a mistrial, or other appropriate motion, and for a discharge of the jury.

No motion for mistrial was made. Every fact which is ground for mistrial must be taken advantage of before a verdict is rendered, if it is known to the defendant or his counsel; otherwise it will be considered as waived. *Swain* v. *State,* 162 *Ga.* 777 (6) (135 S. E. 187); 7 R. C. L. 1043, § 76, § 77; *Raney* v. *McRae,* 14 *Ga.* 589 (60 Am. D. 660); *Thomason* v. *Thompson,* 129 *Ga.* 440, 445 (59 S. E. 236, 26 L. R. A. (N. S.) 536); Harrison *v.* Harrison, 20 Ala. 629 (56 Am. D. 227). See note in 15 L. R. A. 273. In order to sustain a motion in arrest of judgment, the defects must appear on the face of the record and must be fatal defects. Penal Code (1910), § 980. The record upon which the movant must rely consists of the pleadings; that is, the indictment, the plea of not guilty, the verdict of the jury, and the judgment or sentence of the court. *Pippin* v. *State,* 172 *Ga.* 224 (157 S. E. 185). And see *Brown* v. *State,* 150 *Ga.* 585 (104 S. E. 428); *Hughes* v. *State,* 159 *Ga.* 819 (5), (127 S. E 109); *Gravill* v. *State,* 165 *Ga.* 780 (3) (142 S. E. 100).

■ Ground 2 of the amendment to the motion for new trial is as follows: "Because the court committed error, harmful and prejudicial to this defendant, in admitting in evidence, over defendant's objection, a shirt found at the house where one Charles Haden resided the morning after the alleged crime was committed, having thereon certain spots claimed to be blood, the entire evidence with reference to the shirt being as follows: 'L. J. Stephens, a deputy sheriff, testified: I found a white shirt at Haden's home, late that afternoon after he was arrested in the morning. It was in the dirty clothes on the back porch, or a little back hallway. The shirt had blood on it. This is the shirt [indicating]. Q. Did you find the shirt at Haden's house? A. Yes, sir. Q. The day he was arrested? A. Yes, sir. His father was with me when I pulled the shirt out of the dirty clothes. I also showed the shirt to Haden in the jail. Haden's father and all the family live at the house where I got the shirt. I have no way of knowing whose shirt it is, except what I was told.' Miss Ruth Stocks, the prosecutrix, testified: 'It was a moonlight night; and the best I could see, Haden had on a white shirt. Before that, they pulled my underwear off, and when they were through with me I put on my underwear, and I looked across and saw Haden had on a white shirt and blood on the left-hand side of it at the bottom.' Defendant ob-

jected to the introduction of the shirt in evidence, because there was no proof or contention that it was the defendant's shirt, nor was there any proof that it was the shirt worn by Charles Haden, who it was claimed actually committed the crime of rape, nor was there any proof that the spots on the shirt were bloodstains or what they were, nor how or when the shirt became spotted, nor anything else to connect the shirt with the defendant or the crime with which he was charged. Movant contends that the court erred in admitting the shirt in evidence over the objections of the defendant, and that such error was highly prejudicial against this defendant, especially in view of the argument of the solicitor-general in which he waved the 'bloody shirt' before the jury and referred to the spots thereon as the blood of the victim shed in defense of the priceless jewel of her virginity." The court did not err, in view of the evidence in connection therewith, in allowing the shirt in evidence as the shirt of Haden, who the State insisted was the principal in the first degree. *Powers* v. *State,* 174 *Ga.* 202 (2), 204 (162 S. E. 275).

■ Ground 3 is as follows: "The defendant's motion for a mistrial was also based upon the fact that during the argument of the case the presiding judge held in plain view of the jury a copy of the Macon Telegraph, a newspaper, on which, in large letters running across the entire front page, was this headline: 'Charles Haden Must Die For Attack on Girl.' Charles Haden, referred to in the headline, had been indicted for the same crime for which the defendant was then on trial. His case had been submitted to a jury, and the jury had retired to consider the same while the jury in the case against this defendant was being empaneled, and every effort had been made to keep the jury in ignorance of the verdict in the case against said Haden. The jury had been cautioned not to read any newspapers or to talk to any one or permit any one to talk to them. The inadvertent act of the judge in holding the newspaper in such way that the jury could not help seeing the headlines carrying the story of Haden's conviction and sentence of death were therefore highly prejudicial to this defendant. Defendant contends that the motion for a mistrial should have been granted, and that the overruling of the motion was error." Note by the court: "With reference to the recital of facts touching the exhibition of a newspaper to the jury, containing a large headline expression the conviction

of Haden in a companion case, the court certifies the facts to be as follows: While the evidence was being taken in this case, the judge examined a newspaper to find an article in which he was interested. This paper was handed to him by a reporter, and did have on the outside a large headline such as described in the amended motion. This headline was on the first page of the newspaper, and that page would have been exposed to the jury if it was lifted high enough by the judge for the jury to see it. The jury-box is about fifteen feet from the judge's stand. The judge opened the newspaper and searched out the article in which he was interested and read it, but the court can not certify that any juror saw the headlines." In view of the judge's qualified approval of this ground, it can not be considered. A ground of a motion for new trial, in order to be considered, must be approved without qualification. *Perdue* v. *State,* 126 *Ga.* 112 (54 S. E. 820); *Jordan* v. *State,* 153 *Ga.* 167 (111 S. E. 417); *Hayes* v. *Chapman,* 147 *Ga.* 625 (95 S. E. 216).

■ Ground 4 is as follows: "Because the court erred at the conclusion of his charge to the jury, and just before the jury retired to consider the case, by giving them the following instruction: 'Gentlemen, at twelve o'clock to-night [Saturday] you will have to cease your deliberations. Nothing you did on Sunday would be valid or legal. So that at twelve o'clock you will cease all your deliberations, and you could not take the case up again until Monday morning or Sunday night at twelve o'clock.' Defendant contends that this instruction was error, for that it is not illegal for the jury to deliberate on Sunday or to return a verdict on Sunday; and the instruction was prejudicial to this defendant, because under it the jury were kept together, after the case was finally submitted to them, two nights and a full day in idleness and without being allowed to consider the case during all that time, after having been kept together and away from their several businesses for three full days prior to the final submission of the case. Being met with the prospect of going into another week, the jury were coerced into making a verdict without mature deliberation, which did not represent the convictions of all of the jurors, the verdict being one of guilty without a recommendation to mercy." The instruction to the jury was not erroneous. *Moore* v. *State,* 130 *Ga.* 322 (3) (60 S. E. 544), where a similar instruction was considered.

■ Ground 5 complains that the court erred in charging the jury as follows: "The defendant has made a statement not under oath; that statement you are authorized to take in preference to the sworn testimony in the case, or you may reject it altogether; or you may believe it in part or disbelieve it in part. You should give to the defendant's statement that force, weight, and credit to which you, as impartial, upright jurors think it entitled." While this charge is not in the exact language of the Penal Code (1910), § 1036, and while it is always better to charge in that language, there was no such variance from the statute as will work a reversal of the judgment.

■ Ground 6 complains of a refusal of the court to give in charge to the jury the following requested instruction: "The defendant is indicted for rape, for that he did have carnal knowledge of Ruth Stocks forcibly and against her will. I charge you that the burden is on the State to show beyond a reasonable doubt that defendant did actually have such carnal knowledge of the prosecutrix forcibly and against her will; that he was himself the actor and absolute perpetrator of the crime of rape upon her. It would not be sufficient, to convict him of the crime of rape, merely to show that he aided and abetted another in the commission of that offense upon the prosecutrix. Before you can convict defendant of rape under this indictment, it must be shown beyond a reasonable doubt that he himself committed rape upon the person of Ruth Stocks." The refusal to give the requested charge was not error for any reason assigned. *Johnson* v. *State*, 151 *Ga.* 21 (105 S. E. 603), and cit.

■ Ground 13 is as follows: "Because the court committed error, harmful and prejudicial to this defendant, in charging the jury as follows: 'That definition of rape should be taken in connection with this principle of law: A person may be a principal in an offense in two degrees; a principal in the first degree is the actor or absolute perpetrator of the crime; a principal in the second degree is he who is present aiding and abetting the act to be done. The punishment for a principal in the second degree in a rape case is the same as that of the principal in the first degree, and there is no practical difference between the two. If the evidence shows beyond a reasonable doubt that the defendant is guilty as charged in the indictment either as principal in the first degree or as principal in the second degree, a general verdict of guilty is authorized. If

two persons combine to commit a crime, and one perpetrates the criminal act while the other only aids or abets the actual perpetrator, if the assistance given by the abettor was in furtherance of a joint purpose to commit the criminal act and in furtherance of the commission thereof, then they are both partners in crime, and one who aids or abets a crime under such circumstances is equally guilty with the actual perpetrator thereof.' Movant contends that this charge was error, because the indictment charged the defendant with the offense of rape, for that the defendant 'did then and there unlawfully and with force and arms and feloniously make an assault upon and have carnal knowledge of Ruth Stocks, a female, forcibly and against her will.' The defendant being indicted as principal in the first degree and as the actor or absolute perpetrator of the crime, and the indictment being a separate indictment, and no reference being made to any other person as in any manner concerned with the crime, defendant contends that he could not be convicted under this indictment as principal in the second degree; and the court therefore erred in the foregoing charge and in instructing the jury at all on the law of principal in the second degree," etc. The charge on principals in the first and second degrees was not erroneous for any reason assigned. "There is no difference in this State between the punishment of a principal in the first degree and that of a principal in the second degree; and where this is true, it seems now to be well-settled that there is no practical or material difference between principals of the two degrees, and a principal in the second degree may be convicted on an indictment charging him as principal in the first degree; in other words, an indictment charging one as principal in the first degree is supported by evidence showing him to be a principal in the second degree. This is especially true if the facts, as in this case, be such as that the act by which the crime is perpetrated would, on established principles of law, be imputed to him as committed by himself through the agency of another. 1 Bish. Crim. Law, § 648; 2 Bish. Crim. Proc. § 3; Desty, Amer. Crim. Law, § 36a; 2 Roscoe, Crim. Ev. p. *752-3; *Hill* v. *State,* 28 *Ga.* 604; *Leonard* v. *State,* 77 *Ga.* 764; *Ferguson* v. *State,* 32 *Ga.* 658; *McGinnis* v. *State,* 31 *Ga.* 263; *Plain* v. *State,* 60 *Ga.* 284; *Dumas* v. *State,* 62 *Ga.* 58." *Collins* v. *State,* 88 *Ga.* 347, 350 (14 S. E. 474); *Johnson* v. *State,* supra. "When principals in the first and second degrees are pun-

ished alike, no distinction between them need be made in the indictment. The act of one is the act of all." *Leonard* v. *State,* supra. In *Bullard* v. *State, 34 Ga. App.* 198, 200 (128 S. E. 920), it was held: "Where a crime capable of being committed by one person alone is in point of fact committed by two persons acting jointly and with a common purpose, one as principal in the first . degree and the other as principal in the second degree, the offenders may be indicted either jointly or separately; and where the principal in the second degree is indicted separately, he may be treated in the indictment as if he were the absolute and sole perpetrator of the crime, no reference therein to any other participant in the crime being necessary; and where so indicted, the principal in the second degree may be convicted upon proof alone that he was present actually or constructively at the scene of the crime, aiding and abetting its commission by his confederate, who was the actual perpetrator." The ruling in this division applies also to the question raised in ground 14 of the motion for new trial.

■■■ Ground 15 alleges error in that the court, "after instructing the jury that under the indictment they were authorized to find the defendant guilty of an assault with intent to rape if the evidence showed that the crime of rape had not been committed," charged as follows: "and provided that the evidence fails to show beyond a reasonable doubt that the crime of rape was committed by Ross Hatcher Jr., either as principal in the first degree or as principal in the second degree. If the evidence shows beyond a reasonable doubt that the crime of rape was committed by defendant Ross Hatcher Jr., as alleged in the indictment, either as principal in the first degree or as principal in the second degree, or if the evidence shows beyond a reasonable doubt that Charles Haden did, on the 25th day of August, 1931, in Bibb County, have carnal knowledge of Ruth Stocks, a female, forcibly and against her will, and also that the defendant, Ross Hatcher Jr., then and there aided and abetted Charles Haden in the commission of such crime in furtherance of a common purpose, then you could not find the defendant Ross Hatcher Jr., guilty of an assault with intent to rape, but you would be authorized to find him guilty of rape." The assignment of error is controlled by the ruling in division 8 of this opinion and the cases there cited.

■■■ In ground 17 error is assigned on the following charge:

"By reasonable doubt is meant such a doubt as arises in the minds of upright and impartial jurors seeking to find the truth from a consideration of the evidence or lack of evidence, or the defendant's statement. If, after a consideration of all the evidence in the case, or lack of evidence, or the defendant's statement, there remains on your minds any reasonable doubt as to his guilt, you should give him the benefit of the doubt and acquit him." The assignments of error on this charge do not show cause for reversal.

Ground 18 assigns error on the following charge: "You are the sole and exclusive judges of the facts. The responsibility of finding the truth from the evidence or the defendant's statement rests upon you." This charge was not error.

Ground 19 is as follows: "Because the court committed error, harmful and prejudicial to this defendant, by failing to charge the jury as to the amount of mental conviction necessary to justify a verdict of guilty, as provided in section 1012 of the Penal Code and section 1013 of the Penal Code. The court should have charged the jury that in criminal cases a greater strength of mental conviction is necessary to justify a verdict of guilty than a mere preponderance of evidence, and should have charged in the language of section 1013 of the Penal Code." It was not error to fail to give in charge these sections of the Code. *Williams* v. *State,* 125 *Ga.* 302 (3) (54 S. E. 108)'; *Howell* v. *State,* 160 *Ga.* 899 (5 *a*) (129 S. E. 436).

None of the special grounds of the motion for new trial require a reversal. The evidence authorized the verdict, and the judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Atkinson, J., who dissents.*

### ON MOTION FOR REHEARING.

HILL, J. In *Dean* v. *State,* 43 *Ga.* 218, Lochrane, C. J., speaking for the court, said: "The principle of law laid down in the case of *Hoye* v. *State,* 39 *Ga.* 718, has been misunderstood by the bar, in holding that nothing was waived by the prisoner except it was expressly waived. That case turned upon the jurisdiction of the court, which, by a host of decisions, had to be expressly waived to bind the prisoner in cases where it could be done. But in the progress of a case, before a court of competent jurisdiction, the prisoner may, by his silence, or failure to take exceptions to irregu-

larities transpiring in his presence, bind himself by such waiver, and the courts will not afterwards interfere." In the instant case the court had jurisdiction to try the defendant. It was a special term of the superior court, called for that purpose, which is authorized by the Civil Code (1910), § 4876; and the court had jurisdiction to try the defendant and to receive the verdict even though the verdict was returned on the day that the new term of the court convened. The case is distinguishable from cases where the defendant was tried at an illegal term of court; for in those cases the court was without jurisdiction to try the defendant.

*Rehearing denied.*