## BRANTLEY *v.* THE STATE.

1. Where in the trial of an indictment for burglary there was no evidence that any article of property, shown to have been in the house wherein the crime was alleged to have been committed, before or at the time of its alleged perpetration, was thereafter found in the possession of the accused, a charge with respect to the recent possession of stolen property was not warranted.

2. The rule that " acquiescence, when the circumstances require an answer or denial, . . may amount to an admission," was not applicable under the evidence in this case.

3. The charge was objectionable in that it was argumentative and too strenuously impressed upon the jury circumstances tending to implicate the accused, with no corresponding statement of the points insisted upon in his defense.

Submitted March 17, — Decided April 2, 1902.

Indictment for burglary.   Before Judge Roberts.   Dodge superior court.   January 20, 1902.

*M. H. Boyer* and *Herrman & Highsmith*, for plaintiff in error.
*J. F. DeLacy, solicitor-general,* contra.

FISH, J.   At the November term, 1901, of the superior court of Dodge county, Berry Brantley was convicted of burglary, the indictment charging that he broke and entered the dwelling-house of J. J. Harrell with intent to commit a larceny.   The accused made a motion for a new trial, and the same having been overruled, he excepted.   The evidence relied on as implicating him was entirely circumstantial; and while it may have been sufficient to authorize the verdict, it was, to say the least, a very close case.   The fact that a burglary had been committed was fully established, and the real question at issue was whether or not the accused was the perpetrator of the crime.

1. It appeared from the evidence introduced in behalf of the State that a certain "yellow" cape was, shortly before the burglary, in the house described in the indictment, and was afterwards missing therefrom; and further, that shortly thereafter a "dark colored" cape was found in the possession of the accused.   In this connection the court gave in charge to the jury the law with respect to the recent possession of stolen property.   We do not think this charge was warranted.   There having been a total failure on the part of the State to identify the cape which the accused had with that which disappeared from the premises of Harrell, no instruction on this branch of the law was applicable or proper.

2. According to the evidence, the offense, by whomsoever committed, was perpetrated upon a rainy night, and there was testimony with respect to certain tracks found near the house, which tended to show that the person who committed the offense had on badly worn shoes, which made in the ground what some of the

witnesses termed "ragged" tracks. There was also evidence warranting an inference that the person who made these tracks stopped on his way and cut off a portion of the sole of one of his shoes. The sheriff testified that while the accused was in jail awaiting his trial, his brother, William Brantley, said, in his presence and hearing, that on the night of the burglary the accused had come into this brother's house, wet and "with his shoes all torn up," and that his wife built a fire to dry his clothes, and got him some strings to fix his shoes. The officer further stated that to these remarks of William Brantley the accused made no reply. Upon this state of facts, his honor gave in charge section 1003 of the Penal Code which reads as follows: "Acquiescence, or silence, when the circumstances require an answer or denial, or other conduct, may amount to an admission," and in this connection, in substance, instructed the jury to inquire whether or not the silence of the accused at the time such statements were made amounted to an incriminating admission. We do not think the evidence here referred to authorized such instructions. In view of all the facts, the statements. made by the brother of the accused in his presence could not be fairly construed as a charge of crime against the accused, which called for an answer on his part. It would be straining to hold that the brother had any such intention or that the accused could have so understood. The principle laid down in *Chapman* v. *State*, 109 *Ga.* 157, is applicable here. It was there held to be erroneous to admit in evidence against one on trial for a crime a declaration which had been made by his wife in his presence before the offense was committed, the same having been offered as tending to show a threat on his part, when there was nothing in what she said to call for a disclaimer by the accused of any criminal intent or purpose. If such evidence was improperly admitted, it would, of course, have been erroneous to base thereon a charge like that now under discussion. See the authorities cited on page 159 of the volume last cited.

3. We the more readily grant a new trial in the present case for another reason. The charge of the court was. objectionable in that it was argumentative, and strenuously pointed out and impressed upon the attention of the jury numerous minute circumstances tending to implicate the accused. The theory of the State was repeatedly stated to the jury, with no corresponding statement

of the points insisted on in behalf of the defense.    See, in this connection, *Thomas* v. *State*, 95 *Ga.* 484.

In view of the errors above pointed out, the trial judge erred in refusing to grant a new trial.

*Judgment reversed.    All the Justices concurring, except Little · and Lewis, JJ., absent.*