## JOHNSON v. THE STATE.

1. On the trial evidence of the sayings of a third party, jointly indicted with the accused for the offense and previously convicted, made in the presence of the accused, and of the failure of the accused to admit or deny the truth thereof, was admitted against the accused. In the motion for a new trial error is assigned thereon, but it is not shown what objection to the admission of the evidence was made at the time, nor on what ground the motion to rule out the same was based. *Held*, that this does not show error. It is not sufficient that the evidence was admitted over objection; nor that a motion was made to rule it out after admission; nor that certain grounds of objection are contained in the motion for new trial. *Edenfield* v. *Brinson*, 149 *Ga.* 377 (4), 378 (100 S. E. 373).

2. Where an indictment charges the accused jointly with another as principal, and where the evidence shows that another inflicted the mortal blow — the accused being present aiding and abetting, both are principals in law, as well as in fact; and the stroke of one being the stroke of the other, a verdict finding the former guilty as a principal in the second degree is not illegal and will not require the grant of a new trial. *Hill* v. *State*, 28 *Ga.* 604. We are formally requested to review and overrule the cases of *Washington* v. *State*, 36 *Ga.* 222, and *Shaw* v. *State*, 40 *Ga.* 120, in so far as they are in conflict with the principle ruled in this headnote, on the ground that these cases are at variance with the earlier case of *Hill* v. *State*, supra. In so far as the two latter cases conflict with the former they are, on review, overruled. In subsequent cases the rule laid down in the *Hill* case has been followed by this court on the principle that the later cases of *Washington* and *Shaw* were in conflict, and that the older must prevail. *Dumas* v. *State*, 62 *Ga.* 58 (5); *Leonard* v. *State*, 77 *Ga.* 764; *Collins* v. *State*, 88 *Ga.* 347, 349 (14 S. E. 474); *Nobles* v. *State*, 98 *Ga.* 77, 79 (26 S. E. 64, 38 L. R. A. 577); *McWhorter* v. *State*, 118 *Ga.* 55 (44 S. E. 873); *Morgan* v. *State*, 120 *Ga.* 294 (48 S. E. 9); *Lofton* v. *State*, 121 *Ga.* 172 (48 S. E. 908); *Lowe* v. *State*, 125 *Ga.* 55 (4), 57 (53 S. E. 1038); *McLeod* v. *State*, 128 *Ga.* 17 (3) (57 S. E. 83); *Bradley* v. *State*, 128 *Ga.* 20 (2) (57 S. E. 237); *Jones* v. *State*, 130 *Ga.* 274 (6), 279 (60 S. E. 840); *Reeves* v. *State*, 135 *Ga.* 311 (69 S. E. 536); *Lewis* v. *State*, 136 *Ga.* 355 (71 S. E. 417); *Futch* v. *State*, 137 *Ga.* 75 (3), 79 (72 S. E. 911); *Kettles* v. *State*, 145 *Ga.* 6, 7 (88 S. E. 197); *Johnson* v. *State*, 148 *Ga.* 546 (2), 547 (97 S. E. 515).

3. The method used by the deputy sheriff in obtaining the evidence referred to in the first headnote is deprecated and disapproved; and the evidence taken as a whole is, in the opinion of a majority of the court, not sufficient to support the verdict. BECK, P. J., and GEORGE, J., dissent, on the ground that the evidence was sufficient.

No. 2098. JANUARY 13, 1921.

Indictment for murder. Before Judge Thomas. Bibb superior court. May 15, 1920.

*Hubert F. Rawls* and *Walter J. Grace*, for plaintiff in error.

*R. A. Denny*, attorney-general, *Charles H. Garrett*, solicitor-general, and *Graham Wright*, contra.

GILBERT, J. The evidence against the accused, Viola Johnson, is insufficient to support the verdict. The facts found in the evidence, of an incriminating character, are so brief that they may be appropriately stated herein. The body of the deceased was found on a railroad-track, with the head completely severed and showing other evidences of violence. The State offered the testimony of a deputy sheriff, to the effect that John Sharpe (who had already been convicted of participation in the crime) stated to the witness, in the presence of this defendant, who was being held in jail charged with the homicide, that he and this defendant were called from their home at night by Charlie Irwin and Sarah Shelly, a sister of the accused, and led a short distance, where the defendant or Sarah Shelly (Sharpe, according to the witness, being unable to state positively which) called the deceased from his home, when Irwin struck or cut the deceased and robbed him of his money, after which his body was carried by Irwin and Sarah Shelly a short distance to a railroad-cut and thrown upon the track; and that this defendant had neither affirmed nor denied the statement made by Sharpe, although told that she might do so. Sharpe was not introduced as a witness. The State offered evidence to the effect that the deceased lived about one hundred yards from the point at which the body was found on the railroad-track; that a trail led from a point within a few feet of his home to the railroad; that on the morning after the homicide the footprints of a man and woman were found on the right and left, respectively, of this trail, going towards the railroad; that there were indications of some object having struck the bank of the railroad-cut at one point between the top and bottom, and of its having been dragged from the bottom of the cut to the point at which the body was found on the track; that the accused occupied a room in a house located within about thirty feet of the railroad, and John Sharpe occupied the only other room in this house; that in the very early morning of the day following the homicide Sharpe was seen coming out of the railroad-cut where the body of deceased was found; and that on the same day clothing belonging to Sharpe, stained with blood, was found under a bed in the room occupied by him, and at the same time an underskirt having a bloodstain slightly to the rear on the right-hand side near the bottom hem was found in a trunk in the room of the accused. The accused in her statement claimed that the under-

skirt had been stained by menstruation while she was picking cotton several days before the homicide; and she offered the evidence of a brother-in-law and sister, who were in the field with her at the time, to the same effect. Her niece also testified that she spent the night on which the homicide occurred with her aunt and occupied the bed with her, and that the accused did not leave the bed during the night. The blood said to have been found on the garments of the accused was satisfactorily explained, without any contradictory evidence. *Williams* v. *State,* 113 *Ga.* 721, 723 (39 S. E. 487). The footprints belong to the weakest character of evidence. According to John Sharpe the woman's footprints were made by Sarah Shelly. There is no evidence, positive or circumstantial, that they were made by Viola Johnson. The fact that John Sharpe was seen coming out of the railroad-cut the next morning in no way connects the accused with the criminal enterprise. The accused in this case was not connected with the criminal offense in any manner except by the sayings of Sharpe. Moreover, if the statement of John Sharpe is true and of any probative value as against Viola Johnson, he is, out of his own mouth, proved to be an accomplice; and before a conviction may stand upon his evidence it must be corroborated by circumstances or another witness. Penal Code, § 1017. Admitting, for the sake of argument, that the sayings of Sharpe were true, the effect at most is to place the accused at the scene of the homicide; but it is not shown that she took part in the homicide. " Mere presence and participation in the general transaction in which a homicide is committed is not conclusive evidence of consent and concurrence in the perpetration of the crime by a defendant sought to be held responsible for the homicide as aiding and abetting the actual perpetrator, unless such defendant participated in the felonious design of the person killing." *Futch* v. *State,* 137 *Ga.* 75 (3a), 76 (72 S. E. 911) ; *Fudge* v. *State,* 148 *Ga.* 149 (95 S. E. 980). At most the sayings of the accomplice would show that Viola Johnson, at the request of her sister and Charlie Irwin, went with them to the scene of the homicide, without being previously informed of their purpose or what was to take place. Even a confession freely and voluntarily made without the slightest hope of reward or remotest fear of injury, under the law, must be received by the jury with great care and caution; and it is the duty of the court so to instruct the jury, in order

that the jury may be warned of the weakness of such evidence. The silence of the defendant was not a confession of guilt. *Thomas* v. *State,* 143 *Ga.* 268, 269, 270 (84 S. E. 587), and citations. "The law does not favor convictions based upon confessions, and, least of all, implied confessions." *Graham* v. *State,* 118 *Ga.* 808 (45 S. E. 616). The sayings of the accomplice in this case must, by all rules of reason, be weaker than a confession. They are not the sayings of the accused, and can only be considered to be binding on the accused on the ground that silence implies consent. Such silence is not an affirmative act on the part of the accused, expressive of guilt. *Thomas* v. *State,* supra. When under arrest and confronted by another in the presence of an arresting officer, silence by the accused is as consistent with the theory that the accused prefers to exercise his right to await trial by the proper tribunal as it is of the consciousness of guilt. In *Cobb* v. *State,* 27 *Ga.* 648, there was evidence to show that the keeper of the penitentiary obtained a letter written to the prisoner, Cobb, in which the writer of the letter, who had been previously convicted of being a participant in the same homicide with which Cobb was charged, discussed the connection of the prisoner with the crime and advised him to confess and make peace with God. The officer unlocked the cell and went in to the prisoner, who, after the letter was read to him, replied that he should make no confession. These facts were admitted in evidence over objection of the accused, and error was assigned thereon. This court held that the evidence ought to have gone to the jury, to have been allowed by them whatever weight they might have considered it entitled to as indicating, however slightly, his guilt; but the opinion on that subject, at page 698, concludes as follows: "They would not alone, perhaps, warrant a conviction, but they are certainly entitled to some degree of weight, and should be considered." Compare *Carter* v. *Buchannon,* 3 *Ga.* 513, *Rolfe* v. *Rolfe,* 10 *Ga.* 143, *Brantley* v. *State,* 115 *Ga.* 229 (41 S. E. 695). In 2 Wigmore on Evidence, 1253, § 1071, it is said: "Qui tacet consentire videtur, 'silence gives consent,' are ancient maxims, which have ever been taken to be unquestioned and have a larger scope than their application in the law of evidence. But, like all maxims, they merely sum up a broad principle, and cannot serve, with-

out decided qualification, as practical and precise rules. Silence implies assent to the correctness of a communication, but on certain conditions only." In 2 Wharton's Criminal Evidence, 1407, 1409, it is said that the doctrine of acquiescence by silence or conduct is subject to limitations, and among them, the following: " Such accusations and statements are not evidence against the accused where he remains silent when they are uttered, at a time when he is in custody or under arrest on a criminal charge, as he has the right to keep silence as to the crime, and is not called upon to reply to it, nor to contradict such statements." See numerous citations thereunder, note 12. In *Bell* v. *State,* 93 *Ga.* 557 (19 S. E. 244), an incriminating statement against the accused and in his presence was made on a preliminary investigation before the city recorder of Macon, and evidence was admitted to show the silence of the accused. In passing upon the admissibility of that evidence this court said: " The only evidence relied upon to connect him with the burning, besides the belief of a witness that he was present near the scene of the fire, was that relating to his own statements and his failure to deny Fambro's statement to the recorder at the time it was made. His silence at that time, however, cannot be treated as an admission, Fambro's statement being made in the progress of an investigation before a judicial officer, when silence, if not required, was at least justified as a matter of decorum." Under our constitution no person is compelled to give evidence tending in any manner to incriminate him. Even one on final trial for a criminal offense may elect to remain silent. After hearing the indictment read or the statement of the charge contained in the indictment, and after hearing all of the evidence introduced by the State to prove his guilt, he may forego his privilege, under the statute, of making a statement; and under all of these conditions no presumption of guilt may be implied because of his silence, and such silence may not be commented upon by the prosecution. *Graham* v. *State,* 118 *Ga.* 808 (45 S. E. 616). Certainly, therefore, silence by the accused under the conditions shown by the record in the present case should not, in any event, be considered as positive evidence tending to prove the guilt of the accused. In People *v.* Cascia, 191 App. Div. 376 (181 N. Y. Supp. 855 (2), 857), this question was elaborately discussed, both in a majority and a dissenting opinion.

In the majority opinion it was said that "evidence of this character is dangerous and should always be received with caution. People v. Kennedy, 164 N. Y. 457, 58 N. E. 652. With this remark every one who has had experience in criminal trials must agree. It is entirely too probable that the jury, not conversant with the arbitrary rule excluding hearsay evidence, would give weight to the accusation itself. The evidence is admissible only if the accused is 'at full liberty to make answer thereto.' Kennedy Case, supra. No one is compelled to be a witness against himself. The failure of the accused to testify on the trial is not evidence against him." The evidence was ruled admissible by the majority of that court, but in the opinion doubt was cast upon its soundness. The dissenting opinion presents an able argument against the admission of the evidence, in which many authorities are cited. It quotes approvingly from People v. Marendi, 213 N. Y. 613 (107 N. E. 1058), as follows: "Even if he [the accused] had stood mute, his silence could not have been construed as an admission, because he was then under arrest, and not called upon to speak or deny an accusation." Citing People v. Smith, 172 N. Y. 210; Commonwealth v. McDermott, 123 Mass. 440 (25 Am. R. 120). And from the case of People v. Smith, supra, the following is quoted: "Moreover, he was at the time under arrest and in the custody of an officer, and might well have been silent without its being regarded as an acquiescence in any act proved to have been performed." However, section 1029 of our Penal Code declares: "Acquiescence, or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission." Regardless of whether the evidence was admissible, the use of the word "may" before the words "amount to" must not be overlooked. For the citation of other authorities with conflicting views see 34 Harvard Law Rev. 205; 33 Yale Law Journal, 300. In this case one who has already been convicted is brought into the presence of the accused, who is incarcerated in jail, and in the presence of a deputy sheriff told to make his statement, the officer stating to the accused, "Viola, don't you say anything to anybody until John Sharpe gets through talking; and when he gets through you can say whether it is true or not, or if it is not true." Surely under such circumstances an implication that silence on the part of the accused amounts to positive

evidence of guilt is unwarranted. The evidence is insufficient to support a verdict of guilty against her. While sufficient to raise a grave suspicion, it fails utterly to rise to that dignity required by law in a case of circumstantial evidence; that is, that it must remove every reasonable hypothesis save that of the guilt of the accused. In our opinion the verdict is not authorized by the evidence, and the judgment of the trial court refusing a new trial must be        *Reversed.* *Atkinson and Hill, JJ., concur.*

FISH, C. J. I concur in the judgment of reversal.

BECK, P. J., and GEORGE, J., being of the opinion that the evidence was sufficient to authorize the jury to find the verdict returned, dissent from the judgment of reversal.