McCORMICK *v.* THE STATE.

No. 9294. NOVEMBER 17, 1932.

*McDonald & McDonald,* for plaintiff in error.

*Lawrence S. Camp, attorney-general, T. Hoyt Davis, solicitor-general, T. R. Gress, assistant attorney-general,* and *J. W. Dennard,* contra.

GILBERT, J. T. Y. McCormick, Gene West, and Charley West were jointly charged in an indictment with the murder of Henry Hobbs. McCormick severed on the trial, was convicted with recommendation, and assigns error upon the overruling of his motion for new trial.

■ On the trial evidence of the sayings of a third party jointly indicted with the accused for the offense, made in the presence of the accused, and of the failure of the accused to admit or deny the truth thereof, was admitted. In the motion for new trial error is assigned on the following ground: "State's counsel asked said witness [Max Smith] the following question: 'In the presence of T. Y. McCormick what did Gene [West] say T. Y. had to do with this killing?' Whereupon the defendant objected to said question at the time it was asked, and then and there urged before the court the following grounds of objection, namely: 'We object to that. It appears that the defendant at that time was in the common jail of this county. He was in confinement; and further that the State's prosecuting attorney took the deputy sheriff of the county, the said witness Max Smith being the deputy sheriff of Wilcox County, and had a conversation inside of the prison; that would not be binding upon the defendant. He had nobody present to look after his interests. We do not think he could be bound by some statement these folks went to the jail and made in his pres-

ence at a time when he could not help himself.' Whereupon the court overruled said objections and permitted said witness to testify, over said objections, as follows: 'In the presence of T. Y. McCormick, Gene West said that T. Y. brought this negro to his house and told him that this is Frank Duberry, the negro that killed his brother. He said after he had shot this negro after Gene shot him that T. Y. went in his pockets, then they took him down and buried him out in the yard. T. Y. put a rope around him and then took him and buried him. T. Y. didn't say anything at the time, made no denial.' It is argued in the motion for a new trial that the evidence was material, prejudicial, and hurtful to the movant, for the reason that said testimony led the jury to believe that the statements made by said Gene West, who was an alleged conspirator with the defendant, in the presence of said defendant would amount to an incriminatory admission on the part of the defendant by his silence, and that said statement made by Gene West was true. Movant avers that the inadmissibility of the evidence was beyond a doubt, for the reasons stated in the objections to the question when the same was propounded to said witness; and movant avers that the court erred in permitting said witness to testify as herein set out over said objections." The court did not err in admitting the evidence over the objections. None of the objections actually presented at the time the evidence was offered show any legally sufficient objection.

██ Headnotes 2, 3, 4, and 5 do not require elaboration.

██ The evidence for the State authorized the jury to find the facts as stated hereinafter. The deceased died as a result of a gunshot wound in the back, fired at close range. He had been dead about three weeks, and the body had begun to decompose when disinterred, and an inquest was held to determine the cause of death. The body had been buried in overalls, blue serge pants and pinkish looking shirt, pin-stripe, without shoes or socks. The improvised grave was in a pasture, a short distance from the house occupied by Gene and Charley West, in Wilcox County. Henry Hobbs had been missing from his home since November 29, 1931. The indictment alleges that he was killed on November 30. Fanny Hobbs, wife of Henry, before the dead body was taken from the grave a second time, described her husband to the coroner. After the disinterment Fanny identified the deceased as Henry Hobbs,

her husband, by the fact that the clothes on the body were the same clothes worn by him when he left home on November 29, "and because of his teeth. He had one gold crown to the right; then he had an open space where had been bridge-work. He had had the bridge-work taken out. You could see in his mouth the skin had left his mouth. That gold tooth in the body of that man was like it was in Henry; that open space was there too. I am absolutely sure that was my husband, Henry Hobbs." Fanny also identified the deceased as her husband by the shape of his feet. Henry Hobbs had sixteen dollars on his person when he left home. Human bloodstains were found on the floor of the house where the homicide occurred.

In addition to the above, the following facts were sworn to: Gene West, who was admittedly an accomplice, testified that McCormick came with Hobbs to the home of the Wests about dark, November 30; that McCormick told witness that Hobbs was the man who had killed a brother of the Wests, and told witness "to get some shells and bring them back there for him to kill him, he wanted shells to shoot this man to get his money;" that witness had a gun, but did not have shells; that he "went to Mr. Helms and got shells from his boy;" that when he returned "Hobbs was lying down on the floor . . in the kitchen;" that McCormick "had already got the gun out of the house;" that McCormick told witness to shoot him and get his money; that witness shot him, and he died right then; that McCormick then took from the body some money and an automatic pistol; that witness and McCormick then carried the body to a point some distance from the house; that while they were burying the body and after it had been covered with dirt, Charley West came along as he was returning home from the home of a neighbor, where he had gone after McCormick, and Hobbs appeared at the home of the Wests; and that Charley West was compelled by McCormick to assist in completing the burial. Charley West, who denied that he was an accomplice, testified that he was at the house when McCormick came there with Hobbs; that he left within a few minutes after they arrived, and went to a neighbor's house about half a mile away; that when he left home his brother had one shell; that when he had gone about half a mile from home he heard a gun fire; that he returned in about an hour, and McCormick and his brother Gene were filling dirt into

a hole as he passed along on his return; that he did not know what was in the hole; that McCormick compelled him, under threats, to assist in filling the hole with dirt.

The defendant made the following statement to the jury: "I am not guilty in this case. I met this strange man about first dark one night. He questioned me how far was Finleyson. I told him it was between nine and ten miles. He said, 'I been walking all day,' was tired; said, 'Where is the closest colored folks?' I told him Gene and Charlie West lived about a half mile. He said, 'Is he married?' I told him yes, but his wife wasn't home. He said, 'Reckon I could spend the night there?' I said, 'I don't know.' We goes there. I goes in with him. Charlie and Gene West were getting supper. He asked him, said, 'I am tired, I am traveling;' said 'Could I spend the night?' said, 'You wouldn't have to prepare me a bed, just anywhere in the house out of the weather will do.' Gene said, 'Yes, you can stay.' I holds a little talk, leaves, and goes home. When I gets home Amelia and Willie Ryals were at home. We stays around there until ten or eleven o'clock. I goes to bed. That is all I know about it. I am not guilty of that case. I don't know nothing about it."

It is insisted that the verdict is not supported by evidence. The substance of the evidence, and the statement in hæc verba, are set out above. It is readily seen that the venue and corpus delicti are shown. The jury were certainly authorized to find that the disinterred corpse was the body of Henry Hobbs, as charged in the indictment. Fanny Hobbs positively identified the body; and there was no evidence or any statement of the accused to the contrary. The deceased was killed by a gunshot wound entering near the backbone. It was fired at close range. It was a violent death; and there being no facts to otherwise explain the killing, the jury were authorized to find that the killing was unlawfully and maliciously done. No exculpatory or mitigating facts appear, either in the evidence or in the statement of the accused. The latter bases his defense on the claim that he was in no way implicated in the crime. What, therefore, was there to authorize the jury to find that McCormick was one of the murderers? That is the only question that remains to be settled. McCormick, the accused, took the man, afterwards identified as Henry Hobbs, to the house of the Wests, where the tragedy occurred. McCormick himself so stated

to the court and jury. That fact must, in any event, be accepted as true. McCormick was then at the scene of the crime and was responsible for the presence there of the slain man. Did he leave the scene guiltless of any criminal responsibility? We have his statement that he was guiltless. The statement may be accepted or rejected by the jury, as is well settled. Gene West was admittedly an accomplice, and his evidence is insufficient to convict, without corroboration. He swore that McCormick not only brought Hobbs to his house, as McCormick stated, but instigated the murder, and, after that was accomplished, robbed the body of money and a pistol, and then directed and actively participated in burying the body.

Gene West is corroborated by Dr. Mitchell, in that human blood-stains were found in the house where the murder occurred. He is also corroborated by Charlie West, who denies being an accomplice, who testified that McCormick brought Hobbs to his house, and that he, Charlie, then went away; that on his return to his home he found Gene West and McCormick filling up a hole with dirt; that McCormick forced him to aid in filling up this hole, which afterwards was found to be the place where Hobbs was buried. So the accomplice, Gene West, is corroborated by both McCormick, the accused, and Charlie West, to the effect that McCormick brought Hobbs to the scene of the killing, and by Charlie West, that while Gene West and McCormick were burying the dead man Charlie West returned, and that McCormick was there, engaged in burying the dead body. This, without a doubt, sufficiently corroborated the evidence of Gene West, and authorized the jury to find that McCormick brought Hobbs to the scene of the killing and was there when Charlie returned, and was engaged in burying the dead body. The jury were authorized to find, notwithstanding conflicting evidence, that Charlie West was not an accomplice. On the other hand, if he be considered an accomplice, his testimony is nevertheless sufficient to corroborate the evidence of Gene West, an admitted accomplice. *Pope* v. *State,* 171 *Ga.* 655 (supra). That leaves the sole narrow issue to be determined, whether the evidence, taken as a whole, is sufficient to authorize the verdict of guilty against McCormick, without additional direct evidence to corroborate the evidence of Gene West as to the actual shooting of Hobbs. With the facts established as stated above, that is, that the dead body was

the body of Henry Hobbs, that he was violently and feloniously murdered, that he was brought to the scene of the murder by the accused, T. Y. McCormick, and that McCormick aided in the burial at night, the testimony of Gene West as to the actual slaying was sufficiently corroborated to authorize the jury to return a verdict of guilty against McCormick.

We have not considered, in discussing the question whether the evidence was sufficient to authorize the verdict, some evidence of contradictory statements, nor that portion of the evidence the admission of which formed the ground of the motion for a new trial dealt with in the first division of the opinion. The weight to which the evidence of Max Smith was entitled is one question. Its admissibility is quite another. It is insisted by counsel for the accused that it is not entitled to any weight, under the decision in *Johnson* v. *State,* 151 *Ga.* 21 (105 S. E. 603). We repeat that the evidence, outside of this, was sufficient to authorize the verdict; but it is deemed advisable to show that in some respects the facts of the *Johnson* case differ widely from the facts in this case. In the *Johnson* case the accused woman was convicted on the testimony of John Sharpe, whose statement in the presence of the accused was introduced in evidence, and who manifestly, under the evidence, was an accomplice. Sharpe was not introduced as a witness. In this case Gene West, the accomplice, was introduced as a witness, and repeated in substance the same evidence as stated to Max Smith. The Johnson woman was not connected with the criminal offense in any manner, except by the sayings of Sharpe, the accomplice. She was not shown to be at the scene of the killing, except by the sayings of Sharpe; and moreover, the sayings of Sharpe, at most, showed the presence of the Johnson woman at the scene of the homicide. In the present case it is both admitted by the accused and shown by other evidence that he was at the scene of the killing, and shown by other evidence that he was still there when the deceased was buried.

While there is considerable difference in the facts of the two cases, we repeat that the evidence in the case, outside of the evidence just mentioned, was sufficient to support the verdict.

*Judgment affirmed. All the Justices concur.*

Russell, C. J., concurs in the result.