1. The charge of the court that testimony of the alleged victims in a rape case must be corroborated by evidence of an outcry, some report, or other physical evidence, the jury being the sole judges of the sufficiency of such evidence, was not error for the assigned reason that there was no evidence to authorize the charge. The excerpt did not intimate *Page 247 
that there was such evidence, and was not misleading to the jury.
2. The charge that the jury should take all the evidence, giving to the defendant's statement such weight and credit as they thought it entitled to, apply the law as given in the charge, and make separate verdicts on each count of the indictment, is not subject to the criticism that it was an unsound statement of the law, confusing, and tended to discredit another portion of the charge wherein the jury were instructed that they might believe the defendant's statement in whole or in part and in preference to the sworn testimony.
3. The indictment, which in count 1 charged the defendant with the offense of rape upon a female named therein, and in count 2 charged him with a similar offense upon another named female, was supported by evidence as to each count, and the court did not err in overruling the defendant's motion for new trial on the general grounds.
 No. 15327. JANUARY 15, 1946.
James Porter and Foster Keefe were jointly indicted by the grand jury of Fulton County for the offense of rape; the indictment being in two counts, the first count charging that the offense was committed upon a female hereinafter referred to as "B," and the second count charging that the offense was committed upon a female hereinafter referred to as "M." Upon the trial of Porter alone the evidence was substantially as follows:
C. R. Hensley, a city policeman of Atlanta, Georgia, testified that he was on duty in the vicinity of the city water works on April 1, 1945, and that he saw "B" and "M" about 4 o'clock in the morning about the first or second door on Chattahoochee Avenue where it leaves the Howell Mill Road. Prior to seeing them he observed an automobile, with lights out, coming in his direction, but just before the car passed him the lights were turned on and this attracted his attention. He was unable to identify the occupants of the car or the number of them. The girls flagged him down in the middle of the street, and they were wet and kind of bedraggled and very nervous, crying and in an excited condition, and made a report to him. He gave this report to his superior officer, Lieutenant E. H. Johnson, and after taking the girls to a place where he summoned this superior officer he turned them over to him.
"B" testified that at the time of the alleged rape she lived at 1530 Howell Mill Road. On the night of April 1, 1945, she and "M" went to 100 Newnan Avenue in East Point, Georgia, to see *Page 248 
the sister of "M" and to have supper. About midnight she and "M" went out on Lee Street to catch a trolley car. While they were standing there an automobile drove up to the curb with five people in it. This car was either a 1941 or 1942 Chevrolet, a dark-colored car, and when the boys drove up to the curb, they asked if the girls were going to town, and the witness answered "Yes." The boys insisted that they go with them, but the witness told them that she and her friend were waiting for the trolley car. One of the boys on the front seat and one on the back seat got out of the automobile and shoved the girls into the back of the car. After driving for a short while the car was stopped in what looked to the witness like a forest. The boys got out of the car and started as if they were walking away from the car, and the girls made an attempt to run, but did not get far from the car because the boy she identified as Porter caught her and struggled with her. The tall black-haired boy caught "M." After a struggle for a while, these two boys called the other boys from the car, and the little "muscle boy" jumped in and stuck his foot between the legs of the witness and she fell to her knees. She was screaming for "M" and lost a comb out of her hair, and Mr. Hay, a detective for Fulton County, later found it. Porter and the "muscle boy" dragged her up on a hill and she was told by the latter to cooperate and do as the boys said or they would beat her head into a mummy. She was told to pull her pants off or else they would be taken off. She finally got her pants down and her coat was torn at the lining. Porter attacked her and in the meantime tried to get her purse. Four of the boys had intercourse with her, and she was so hysterical about her bag that she began crying and begging them to bring it back. She was in a kind of daze from then on. They got back in the car and the boys refused to let her put her pants on until she had gotten half way to town. The boys put the girls out at Chattahoochee Avenue and Howell Mill Road, and the girls were unable to get the tag number of the car. As soon as they got out of the automobile they told the officer what had happened. He took them to the water works to make the call and they stayed there about fifteen minutes. From there they went to the police station with two officers who had come to the water works. Porter did not have a chain around his neck when he attacked her. She first identified and recognized him in the courtroom *Page 249 
as being one of the boys who attacked her. She had seen his picture and recognized him from the picture, and she identified him positively as being the one who raped her. In company with Mr. Hay and Mr. Adams she went back to the place where the attack occurred. Mr. Hay found the comb she had lost there, and she recognized it as being her comb, but other articles she had lost were not found. She finally obtained her pocket book, but $38 had been taken out. While Porter had her around the waist she was threatened with a stick by the little chubby boy. She was absolutely positive that Porter was the boy who attacked her and the one who got her pocket book.
"M" testified to the same effect as "B" relative to the two young women being forced into the automobile at the trolley stop and the drive to the scene of the crime. She testified: "This defendant on trial is one of the boys who was in the car. I am positive of that identification. . . When I got out of the car I started running. These boys ran after us and tripped us up, knocked our feet out from under us. They dragged ["B"] up one way and me the other. I think I know which boys attacked me. The defendant was not one of them. He helped knock me down. Later on after they dragged me back to the car he grabbed my purse and I hung on to it. . . So when he wanted to take it away, naturally he couldn't get it with me down on the ground, and he said if I didn't give it to him he would knock me on the head, so he just got the money. I never got my money back. He gave me back my purse. . . I was raped that night. Twice sexual intercourse was committed between me and two of the other boys. I resisted. My clothes were torn from me. I did not get into this car voluntarily when the boys came up. . . A tall boy caught me [as she ran from the car at the scene of the crime]. They don't have him here. The defendant on trial came up and helped detain me. . . I went to the scene of this crime again in company with the officers, L. C. Hay and A. C. Adams, and I recognized the place as being the same place where the attack occurred. . . I am positive that the defendant Porter is one of the boys that was in the car and assisted in the attacks on me, detaining me and accomplishing the attacks on me."
Dr. Harry King testified that he was resident physician on obstetrics and gynecology at Grady Hospital in Atlanta, Georgia, *Page 250 
and was on duty on April 1, 1945, and saw "B" and "M" that night. He examined them to determine whether or not they had had sexual intercourse recently. According to his examination all indications were that both had had sexual intercourse recently, and he found bruises on their bodies but no lacerations. "M" seemed to be rather upset and almost hysterical, but "B" did not seem to be so upset.
L. C. Hay testified that he was a detective for Fulton County, Georgia. A report of the alleged attacks was made to him on the morning of April 2, 1945, and later in the day he got the report from the city. He visited and talked to "B" and "M", who had made the complaint, and later accompanied them to the scene of the alleged crime. They found on April 14, 1945, the location where the crime had been committed, the location being in Fulton County, Georgia. At this place they found the comb that "B" reported she had lost there. "B" and "M" identified the place where the crime was committed, and gave the officers the name of one of the boys as Porter. He took James Porter's picture to "her," and she identified it, and on May 7, 1945, both of the girls identified Porter in the courtroom as being one of the boys.
A. C. Adams testified that he was an officer of Fulton County, Georgia, participated in the investigation of the alleged rape, visited the scene of the crime, and found a comb. The State tendered in evidence the comb, which was admitted without objection. A neck chain, identified as coming off one of the defendants, was admitted in evidence over objection of counsel for the defendant.
Miss June Kennan testified for the defendant that she lived at 1115 South Main Street, East Point, Georgia, and was sixteen years of age. She had been going with the defendant regularly for about five months and was with him on Easter Sunday. He called at her home about 7:30 p. m., and they went to the Rialto Theater in Atlanta, Georgia. They stayed there until about 11:30 p. m., and then went to a restaurant in Atlanta and got something to eat, and from there went straight home on the trolley. She and the defendant arrived at her home about 12:30, and he stayed there a few minutes. He was dressed in a dark suit and white sport shirt and did not have on a tie. Under cross-examination she admitted that an officer had called her on the telephone and *Page 251 
asked her about what time they got back home, and that she had told him it was about 11:30, but that she had thought about it later and was mistaken, as she remembered that Porter told her it was 12:30 that Sunday night.
Mrs. Maggie Porter testified that she lived at 45 Haygood Avenue. She was sixty-one years of age and the defendant was her baby boy. Her son was at home on Easter in the afternoon and returned later in the evening about twenty minutes to 2. She looked at the clock to see what time it was and opened the door for him to come in. He had on a gray suit and a white shirt. On this night her daughter, Mrs. Etheridge, was at her home and woke up and said several words, and said that she heard the witness ask her son what time it was.
Mrs. Maggie Etheridge testified that she lived at 1043 Lyman Avenue, and that the defendant Porter was her brother. She was staying with her mother in April at the time the alleged crime was committed. Her brother left the house later in the afternoon and returned that night at twenty minutes to 2. She slept in a bed in the front room and every time he came in he woke her, and she woke then and saw him the next morning.
The defendant made a statement that he had never seen either of the girls before in his life. On Easter Sunday he and June Kennan went to a picture show at the Rialto Theater and saw "A Song to Remember," as testified by her. From there they went to a restaurant and had something to eat, and from the restaurant on a trolley they went to her home in College Park. When he left her home it was 12:30. He caught the trolley back to Whitehall and Mitchell in Atlanta, got off the trolley there, and caught the last Washington-Lakewood street car that runs at 1:25 When he arrived home he knocked on the door, and his mother let him in and asked what time it was. He told her it was twenty minutes to 2, and she looked at the clock under her bed and said that was right. When he was picked up by the officers he was working in South Georgia and had received a subpoena to come to court on April 7 as a witness for the State in a case, and while he was at court the officers picked him up and talked to him and told him what he was charged with. He had never been in any line-up, and didn't know how the girls identified him because he had not seen either of them, and he was not guilty. *Page 252 
The jury returned a verdict of guilty on both counts of the indictment and fixed his sentence on each count from five to ten years, the sentences to run concurrently. The defendant filed a motion for new trial on the usual general grounds and by amendment added two special grounds. In the first special ground, it was complained that the court erred in charging the jury as follows: "The law says that an accused in a case of rape should not be convicted upon the unsupported testimony alone of the alleged victim, or the female or females involved, unless the same is corroborated by other evidence tending to show to the satisfaction of the jury some outery, some report or some other physical evidence, or some other facts and circumstances which tends to corroborate the story of the alleged victims, and the question of the sufficiency of the corroboration is a question for you gentlemen to determine;" it being contended that there was no evidence in the record on which to base such charge, and that it tended to confuse and mislead the jury, in that it tended to impress them that there was evidence of an outery, report, or evidence corroborating the testimony of the alleged victims, and that such charge was harmful, prejudicial, and influenced the jury in the verdict of guilty returned. In the second special ground, it was complained that the court erred in charging the jury: "So, gentlemen, you take this case and you consider all the facts and circumstances that have been produced to you on the subject, giving consideration to all the facts and circumstances of the case and all the evidence that has been submitted to you, giving to the defendant's statement such weight and credit as you think it is entitled to receive, and applying the law as given you in charge by the court, pass upon the counts in this bill of indictment one by one, and make separate and distinct verdicts on each count;" it being contended that such charge tended to confuse and mislead the jury, was prejudicial to the movant, and was an incorrect statement of the law, and that it tended to distract from and nullify the effect of the charge given as to the weight to be given the movant's statement to the jury.
The court overruled the motion for new trial, and the exception here is to that judgment.
1. The charge of the court on corroboration, complained of in special ground 1 of the motion for new trial, is not subject to the objections urged that there was no evidence on which to base it, and that it was confusing and misleading to the jury, harmful and prejudicial, and tended to impress the jury with the fact that there was such evidence of corroboration. The court elsewhere charged that they were the exclusive judges of the credibility of the witnesses, and in the particular excerpt properly submitted to the jury the question whether there was sufficient corroboration of the testimony of the alleged victims.Allen v. State, 155 Ga. 332 (116 S.E. 534); Harris v.State, 155 Ga. 405 (117 S.E. 460); Hamilton v. State,169 Ga. 826 (151 S.E. 805); Rider v. State, 196 Ga. 767
(7) (27 S.E.2d 667). There was evidence justifying the use of the such illustrations complained of, but even if there had not been, the use of such illustrations of corroboration, by way of example in connection with a correct principle of law, would not be error where as here they had no tendency to mislead the jury, the court not having used them in such manner as to imply that they were intended to be used as facts which had been proved by the evidence. Sharpe v. State, 48 Ga. 16; Parker v.Glenn, 72 Ga. 637 (5-a); Central Railroad c. Co. v.Smith, 80 Ga. 526 (4) (5 S.E. 772); Collier v. State,154 Ga. 68, 78 (2) (113 S.E. 213).
2. The charge complained of in special ground 2 of the motion for new trial was not error for the assigned reasons that it tended to mislead and confuse the jury, was prejudicial and an incorrect statement of the law, and tended to distract from and nullify the charge of the court as to the weight to be given the defendant's statement, viz., that it might be believed in whole or in part or in preference to the sworn testimony. McTyier v.State, 91 Ga. 254 (7) (18 S.E. 140); Merritt v. State,152 Ga. 405 (4) (110 S.E. 160); Pierce v. State, 66 Ga. App. 737,741 (19 S.E.2d 192).
3. "Rape is the carnal knowledge of a female forcibly and against her will." Code, § 26-1301. The evidence for the State clearly showed that the defendant committed the offense of rape *Page 254 
upon the female named in count 1 of the indictment, and that he was present, aiding and abetting another who committed the offense of rape upon the female named in count 2 of the indictment. The defendant by his statement and witnesses introduced in his behalf sought to establish an alibi. "Alibi, as a defense, involves the impossibility of the accused's presence at the scene of the offense at the time of its commission; and the range of the evidence, in respect to the time and place, must be such as reasonably to exclude the possibility of presence." Code, § 38-122. The burden is on the accused to sustain his defense of alibi to the reasonable satisfaction of the jury in order to overcome proof of his guilt of the crime with which he is charged. Harrison v. State, 83 Ga. 129 (3) (9 S.E. 492); Bone v. State, 102 Ga. 387, 392 (30 S.E. 845);Collier v. State, 154 Ga. 68 (6) (113 S.E. 213); Mills
v. State, 199 Ga. 211 (33 S.E.2d 702). The jury were authorized to find that the defendant had not established his alibi, they being the judges of the credibility of the witnesses and of the weight to be given the defendant's statement, and that he had not overcome the prima facie case made by the State under each count of the indictment, and accordingly to return a verdict of guilty as charged in each count. Albritton v. State,175 Ga. 891, 894 (166 S.E. 643); Whitley v. State, 188 Ga. 177
(3 S.E.2d 588). While it was shown by the evidence that the actual perpetrator of the offense of rape upon the female named in count 2 of the indictment was one other than the defendant here, the evidence was sufficient to authorize the jury to find that he was present, aiding and abetting in the commission of the crime; and, since in a rape case the punishment of such a principal in the second degree is the same as that of a principal in the first degree, an indictment charging him as a principal in the first degree is supported by evidence showing him to be a principal in the second degree. Hatcher v. State,176 Ga. 454, 464 (168 S.E. 278), and cases cited.
In the present case no contention is made that, in order to convict the defendant as principal in the second degree, the guilt of the principal in the first degree must be shown by the introduction of the record of his indictment and verdict of guilty. That one indicted as the principal perpetrator of a crime may be convicted as a principal in the second degree where the facts on his trial *Page 255 
show that the crime was committed by another and the defendant was present, aiding and abetting in the felonious design, has been ruled in innumerable decisions of this court, among which are: Hill v. State, 28 Ga. 604; Leonard v. State,77 Ga. 764; Collins v. State, 88 Ga. 347 (14 S.E. 474);McLeod v. State, 128 Ga. 17 (3) (57 S.E. 83); Bradley v.State, 128 Ga. 20 (3) (57 S.E. 237); Johnson v. State,148 Ga. 546 (2) (97 S.E. 515); Rawlings v. State,163 Ga. 406, 422 (136 S.E. 448); Hatcher v. State, supra;Nelson v. State, 187 Ga. 576, 580 (2) (1 S.E.2d 641);Adkins v. State, 187 Ga. 519 (1) (1 S.E.2d 420);Screws v. State, 188 Ga. 678 (2) (4 S.E.2d 601); Bruno
v. State, 189 Ga. 74 (3) (5 S.E.2d 376). In Nelson v.State, supra, it was pointed out that this principle was reasserted in Johnson v. State, 151 Ga. 21 (2) (105 S.E. 603), where Washington v. State, 36 Ga. 222, and Shaw v.State, 40 Ga. 120, holding otherwise, were reviewed and expressly overruled in so far as they were in conflict with what was ruled in the Johnson case, and it was stated in that case that they were at variance with the older case of Hill v.State, supra. The cases which we have cited as stating the true rule do not hold that it is necessary that an antecedentconviction of the actual perpetrator of the crime be shown. Of course, the guilt and conviction of the principal in the first degree may be shown by introducing in evidence the record of his indictment and the verdict of guilty. Studstill v. State,7 Ga. 2 (4); Morris v. State, 54 Ga. 440; Bruce v.State, 7 Ga. 50 (25 S.E. 760); Lewis v. State, 136 Ga. 355
(2) (71 S.E. 417); Jones v. State, 181 Ga. 19 (1) (181 S.E. 80). We make these observations for the reason that inDouberly v. State, 184 Ga. 577, 578 (192 S.E. 226), where three persons were jointly indicted for murder, it was said in the opinion that, "in order to make out its case against this defendant as principal in the second degree, it was necessary that the guilt and conviction of the principal in the first degree be shown" (italics ours); and, while we do not disapprove the judgment of affirmance in that case, we take this occasion to express our disapproval of the quoted statement, it being an erroneous view of the law. In support of this statement, Jones
v. State, 64 Ga. 697, Howell v. State, 160 Ga. 899 (9) (129 S.E. 436), and Rawlings v. State, 163 Ga. 406, 426
(156 S.E. 448), were cited. This decision was concurred in by only five *Page 256 
Justices and is not binding upon us in so far as the erroneous statement as to prior conviction of the principal in the first degree is concerned. The statement quoted is unsound in law, and is unsupported by any of the cited cases, and an examination of them will so readily disclose this fact that no demonstration here is necessary. As pointed out in Harris v. State,191 Ga. 243, 252 (12 S.E.2d 64), this court ruled in Rawlings
v. State, 124 Ga. 31 (52 S.E. 1), that a principal and an accessory before the fact to robbery by force may be charged in the same indictment, and that it must necessarily be inferred from that decision that the court did not consider the previous conviction of the principal to be an essential allegation in an indictment against an accessory. In Hill v. State, 28 Ga. 604, it was ruled that, where the indictment charges the accused jointly with another as principal, and where the evidence shows that another inflicted the mortal blow, the accused being present, aiding and abetting, both are principals in law, as well as in fact, and the stroke of one being the stroke of the other, a verdict finding the former guilty as a principal in the second degree is not illegal and will not require the grant of a new trial. As pointed out in Nelson v. State, 187 Ga. 576, 581
(1 S.E.2d 641), in Johnson v. State, 151 Ga. 21
(105 S.E. 603), in following the above ruling, Washington v. State,36 Ga. 222, and Shaw v. State, 40 Ga. 120, holding otherwise, were reviewed and expressly overruled in so far as they were in conflict with the older case. Where a principal in the first degree has not been convicted, in an indictment charging another person jointly with him as principal, there could be no truthful allegation of prior conviction of a principal in the first degree because obviously he could not be convicted before indictment. Since the State's proof is never required to go beyond the allegations of the indictment, the law does not demand, in order to sustain a conviction of a principal in the second degree, either an allegation in the indictment or evidence of the conviction of the principal in the first degree. However, where one is indicted as a principal in the second degree it is positively required that an allegation and proof of the guilt of the principal in the first degree be made. This requirement does not spring from some insubstantial legalists theory, but is a simple and just demand that the basic crime be fully charged and proved, since the fact of the guilt *Page 257 
of the principal in the second degree necessarily depends upon the guilt of the principal in the first degree. Whether the principal in the first degree be convicted or acquitted, can not in the remotest extent diminish the demand of the law and of society that the principal in the second degree be convicted if the evidence shows him guilty. Though the principal in the first degree may subsequently be acquitted by a jury. In spite of the fact that the evidence authorizes a verdict of guilty, this failure of justice would not render unjust or regrettable the previous conviction of the principal in the second degree where that conviction is sustained by evidence. His evil design and criminal conduct are condemned and punished by the law, and his offense is unmitigated and society is no less injured by his acts because the principal may himself escape conviction. Thus it should be clear that, in order to convict a principal in the second degree, reason and justice could demand no more than that the indictment charge and the evidence show the guilt of the principal in the first degree. The law requires no more.
Judgment affirmed. All the Justices concur.