**COLOSACCO v. UNITED STATES.**

No. 4441.

United States Court of Appeals
Tenth Circuit.

April 17, 1952.

Rehearing Denied May 5, 1952.

Charles A. Murdock, Denver, Colo. (John J. Morrissey, Denver, Colo., on the brief), for appellant.

Joseph N. Lilly, Asst. U. S. Atty., Denver, Colo. (Charles S. Vigil, U. S. Atty., Denver, Colo., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

PHILLIPS, Chief Judge.

Colosacco and one Dolan were charged by an indictment containing three counts. The first count is not here material. The second count charged that Dolan, on July 10, 1951, did falsely assume and pretend to John Priola to be an officer and employee acting under the authority of the United States, to-wit, an agent of the Internal Revenue Bureau, United States Department of the Treasury, and in such pretended character did demand of the said John Priola the sum of $2500, and that on the same day Colosacco did aid, abet, counsel, command, induce and procure Dolan to commit such offenses. The third count charged that Dolan and Colosacco conspired to commit the substantive offense charged in Count Two.

Dolan pleaded guilty to Count Two of the indictment.

Colosacco was tried, convicted and sentenced on Counts Two and Three and has appealed.

On July 10, 1951, Dolan and another person, whose identity was not established, went to the farm of Priola. Dolan, addressing Priola said, "Are you John Priola?" Priola answered in the affirmative. Dolan took a badge out of his pocket and said, "We are from the Internal Revenue Department," and put the badge back in his pocket. The unidentified person took a card, which had a photograph on it, out of his pocket and quickly put it back in his pocket. Dolan said, "We are here to look over your income tax records and returns." They then proceeded, with Priola, to his office in the basement of his home. Priola took his state and federal income tax records out of a drawer in his desk. Dolan stated that they were only interested in the federal income tax returns. Dolan and the unidentified person examined certain of the records. Dolan then stated he wanted to talk to Priola privately and took him into another room. Dolan said, "I hear you are in a pretty bad jam," and further stated they could help him out and asked him how much money he had in the house. Priola replied that he did all his business through the Denver National Bank. Dolan replied that if Priola did not have any money in the house he would go with him to the bank and ascertain how much money Priola had in the bank. Dolan and Priola then proceeded to the Denver National Bank in Priola's car and the unidentified person left in the Chrysler automobile, which he and Dolan had driven to Priola's farm. Before they arrived at the bank, Dolan suggested that Priola indicate how much money he would be willing to pay. Priola replied, "Five or six hundred dollars." Dolan then replied that he had a friend who was helping him who would not consider that amount and that it would take at least $2500, and further stated that unless they could get $2500 they might as well quit. When the bank opened, Dolan went into the bank with Priola and sat down on a bench and watched him. Priola went to the cashier's window and pretended to inquire as to the amount of his bank balance. Dolan and

Priola then went out into the street and Priola told Dolan that he could not raise that amount of money. Dolan told Priola that he would see him again in a couple of days.

On July 11, 1951, Colosacco went to the farm of Priola. Colosacco told Priola he had been in jail over night and had just been released. Priola asked for what reason and Colosacco said, "We are in a jam with this income tax business," and inquired if a couple of fellows had been to see Priola the previous day. Priola answered in the affirmative and asked Colosacco to describe the two men and inquired about the kind of automobile they were driving. Colosacco described the two men and said they were driving a Chrysler automobile. Colosacco said the two men had come to his place with a search warrant, arrested him, and had taken him first to the Post Office Building and then to the city jail. Colosacco then stated that the man he had described as bareheaded and tall and dressed in a light suit, was Stearns, and that he was a pretty good sort of a guy and if Priola would cooperate with them they would get Priola out of the income tax trouble. The person Colasacco represented to be Stearns was, in fact, Dolan. Colosacco then inquired what Dolan and the other person said when they left. Priola told him that Dolan had said he would see him in a couple of days. Colosacco then said, "They will be back."

Priola was well acquainted with Colosacco and had some business relations with Colosacco, which involved Priola's income.

The representation of Colosacco to Priola that he had been arrested and in jail was not true. Dolan was not an Internal Revenue agent. Although Colosacco had been well acquainted with Dolan for a number of years, in his conversation with Priola he used the fictitious name "Stearns" in referring to Dolan.

At the trial, proper proof of a plea of guilty of Dolan to Count Two was introduced in evidence.

■ 18 U.S.C.A. § 2 abolishes the subtle distinctions, recognized with respect to felonies at common law, between principals and accessories before and at the fact, and makes them all principals, whether the offense is a felony or misdemeanor.[1]

■ While conviction of the principal is not a prerequisite to the conviction of the aider and abettor, the proof must establish beyond a reasonable doubt that the offense was committed by someone and that the person charged as an aider and abettor aided and abetted in its commission.[2]

■ Conviction of the principal is prima facie evidence of the principal's guilt on the trial of the aider and abettor.[3] Other evidence which would have been admissible against the principal may be admitted in evidence to prove the guilt of the principal on the trial of the aider and abettor.[4]

■ We conclude that the court did not err in admitting proof of the clerk's minutes showing that Dolan entered a plea of guilty to Count Two of the indictment for the purpose of establishing Dolan's guilt. Moreover, the guilt of Dolan was fully established by uncontroverted evidence.

■ It is well settled that conspiracy to commit a substantive offense and the sub-

1. Von Patzoll v. United States, 10 Cir., 163 F.2d 216, 218.

2. Von Patzoll v. United States, 10 Cir., 163 F.2d 216, 218–219; State v. Cushing, 61 Nev. 132, 120 P.2d 208, 214, 215.

3. United States v. Hartwell, 26 Fed.Cas. 196, No.15,318; Powers v. State, 174 Ga. 202, 162 S.E. 275, 276; Manry v. State, 77 Ga.App. 43, 47 S.E.2d 817, 821; Porter v. State, 200 Ga. 246, 36 S.E.2d 794, 799; Jones v. State, 108 Ark. 447, 158 S. W. 132, 133; State v. Mosley, 31 Kan. 355, 2 P. 782, 783; Levy v. People, 80 N. Y. 327, 331.

4. Powers v. State, 174 Ga. 202, 162 S.E. 275, 276; State v. Anderson, 165 Wash. 437, 5 P.2d 994, 995; State v. Wilson, 51 Idaho 659, 9 P.2d 497, 500; Mulligan v. People, 68 Colo. 17, 189 P. 5, 9; Jones v. State, 108 Ark. 447, 158 S.W. 132, 133; State v. Mosley, 31 Kan. 355, 2 P. 782, 783.

stantive offense are separate and distinct crimes.[5]

An exception to the general rule is recognized as to crimes that cannot be committed except by the concerted action of at least two persons and of such a nature that the immediate effect of their consummation reaches only the participants therein, so that the conspiracy to commit them is in such close connection with the objective offense as to be inseparable from it. Examples of this class of crimes are adultery, bigamy, incest and dueling.[6] But the substantive offense which was the object of the conspiracy here charged does not fall within such class of crimes. Clearly, Dolan could have committed the substantive offense by himself.

■ Counts Two and Three charged separate and distinct offenses and separate sentences were properly imposed on both counts.

■ The trial court denied a motion to transfer the case to another district on the ground that prejudice resulting from certain newspaper articles would prevent Colosacco from obtaining a fair and impartial trial in the District of Colorado. The trial court denied the motion, with leave to renew it, if on the voir dire examination of the jurors it appeared that a fair and impartial jury could not be obtained. The record wholly fails to show that a fair and impartial jury was not obtained and that Colosacco was not tried and convicted by a jury that was free from prejudice and that was fair and impartial.

The elements of the conspiracy here charged were an agreement to commit an offense against the United States and an overt act by one or more of the conspirators to effect the object of the conspiracy.[7]

■ It is true that there was no proof of any formal agreement between Colosacco and Dolan, but that was not necessary. Conspirators do not put their agreements into writing, nor do they make public their plans. It is sufficient to show that the minds of the parties met in an understanding way so as to bring about an intelligent and deliberate agreement to do the act or acts charged, although such an agreement is not manifested by any formal words. A mutual implied understanding is sufficient so far as the combination or confederacy is concerned, and the agreement is generally a matter of inference, deduced from the acts of the persons accused, which are done in pursuance of an apparent criminal purpose. It is rarely susceptible of proof by direct evidence, and may be deduced from the conduct of the parties and the attending circumstances.[8]

■ The facts proved, together with the inferences to be drawn therefrom, warranted the jury in finding that Colosacco and Dolan entered into an unlawful conspiracy to commit the offense charged in Count Two, and that thereafter Dolan committed such offense and that Colosacco counseled, induced and procured its commission by Dolan.

Affirmed.

5. Robinson v. United States, 10 Cir., 143 F.2d 276, 277; Curtis v. United States, 10 Cir., 67 F.2d 943, 947.

6. Curtis v. United States, 67 F.2d 943, 947.

7. United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128; Hudspeth v. McDonald, 10 Cir., 120 F.2d 962, 965, 966.

8. Telman v. United States, 10 Cir., 67 F.2d 716, 717.